HENRY MANCINONE, JR. v. WARDEN, CONNECTICUT STATE PRISON

MICHAEL DiLORETO v. WARDEN, CONNECTICUT STATE PRISON

HOUSE, C. J., THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued January 6—decided February 8, 1972

*Igor I. Sikorsky, Jr.,* special public defender, for the appellant (plaintiff) in the first case.

*Stephen J. O'Neill,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* at-

torney general, for the appellee (defendant) in the first case and for the appellant (defendant) in the second case.

*Arnold H. Klau,* special public defender, for the appellee (plaintiff) in the second case.

HOUSE, C. J. Although these are not companion cases in the sense that we usually employ that term, they do involve the same basic issue and question of interpretation of statutes concerning the imposition of sentences to the state prison. In substantially similar circumstances the trial courts reached conflicting conclusions, and the records of other cases already decided in the trial courts have indicated a continuing diversity of interpretation of the controlling statutes. Counsel have represented that others are "waiting in the wings," that "[p]resently utter confusion reigns and different inmates receive differing results" and "[t]he Department of Correction would also appreciate a rule which would clarify and simplify jail time credit."

The appeal of Henry Mancinone, Jr., concerns the interpretation of what was originally 1967 Public Act No. 869, which became § 18-98 of the General Statutes and was in effect for the period from July 1, 1968, to October 1, 1969.[1] The 1969 session of the

---

[1] "[General Statutes, Rev. to 1968] Sec. 18-98. COMMUTATION OF SENTENCE FOR PERIOD DURING WHICH BAIL WAS DENIED OR UNAVAILABLE. Any person who has been denied bail or who has been unable to obtain bail and who is subsequently imprisoned is entitled to commutation of his sentence by the number of days which he spent in jail from the time he was denied or was unable to obtain bail to the time he was so imprisoned. The commissioner of correction shall credit such person with the number of days to which the deputy jailer of the jail where such person was confined while awaiting trial certifies such person was confined between the denial of bail to him or his inability to obtain bail and his imprisonment."

General Assembly amended the statute by § 2 of Public Act No. 735 and as amended, effective October 1, 1969, the statute now appears in the 1969 Supplement to the General Statutes as § 18-98.[2] As will be noted, the amendment substituted "a community correctional center" for "jail," added "if such person has conformed to the rules of the institution," following "[t]he commissioner of correction shall" and substituted "supervising officer of the correctional center" for "deputy jailer of the jail" following "days to which the . . . ."

The DiLoreto appeal concerns the interpretation of General Statutes § 18-98 as it read prior to October 1, 1969,[3] and § 18-97 as it read at the same time.[4]

---

[2] "[General Statutes, Sup. 1969] Sec. 18-98. COMMUTATION OF SENTENCE FOR PERIOD DURING WHICH BAIL WAS DENIED OR UNAVAILABLE. Any person who has been denied bail or who has been unable to obtain bail and who is subsequently imprisoned is entitled to commutation of his sentence by the number of days which he spent in a community correctional center from the time he was denied or was unable to obtain bail to the time he was so imprisoned. The commissioner of correction shall, if such person has conformed to the rules of the institution, credit such person with the number of days to which the supervising officer of the correctional center where such person was confined while awaiting trial certifies such person was confined between the denial of bail to him or his inability to obtain bail and his imprisonment."

[3] See footnote 1, supra.

[4] "[General Statutes, Rev. to 1968] Sec. 18-97. CREDIT TOWARDS FINE OR SENTENCE FOR PERIOD SPENT IN CUSTODY UNDER MITTIMUS. Any person receiving a fine or prison or jail sentence shall receive credit towards any portion of such fine as is not remitted or any portion of such sentence as to which execution is not suspended for any days spent in custody under a mittimus as a result of any court proceeding for the offense or acts for which such fine or sentence is imposed. The clerk of the court shall enter such credit upon the order in the case of a fine, and upon the mittimus in the case of a sentence and it shall be the duty of the agency or person that held such person under such mittimus to inform the clerk of the court of the proper amount of such credit. In the case of a fine each credit day shall be computed at the rate of three dollars. In no event shall credit be allowed in excess of the fine or sentence actually imposed."

Also involved in both cases are three statutes in effect at the time concerning parolees: §§ 54-126,[5] 54-127[6] and 54-128.[7]

The facts in these two cases are not in dispute. Mancinone, on October 3, 1967, was sentenced to the state prison for a term of not less than one year nor more than three years. On July 8, 1968, he was released on parole. On December 27, 1968, he was arrested on a charge of breaking and entering with violence and confined in the correctional center in Litchfield. On December 30, 1968, pursuant to the

[5] "[General Statutes, Rev. to 1968] Sec. 54-126. RULES AND REGULATIONS CONCERNING PAROLE. Said board of parole may establish such rules and regulations as it deems necessary, upon which such convict may go upon parole, and the commissioner of correction shall enforce such rules and regulations and retake and reimprison any convict upon parole, for any reason that said board, or the commissioner with the approval of the board, deems sufficient; and the commissioner may detain any convict or inmate pending approval by the board of such retaking or reimprisonment."

[6] "[General Statutes, Rev. to 1968] Sec. 54-127. REARREST. The request of said commissioner or said board of parole shall be sufficient warrant to authorize any officer of the department of correction, or any officer authorized by law to serve criminal process within this state, to return any convict or inmate on parole into actual custody; and any such officer, police officer, constable or sheriff shall arrest and hold any parolee or inmate when so requested, without any written warrant, and, for the performance of such duty, the officer performing the same, except officers of said department, shall be paid by the state, through the department of correction, such reasonable compensation as is provided by law for similar services in other cases."

[7] "[General Statutes, Rev. to 1968] Sec. 54-128. VIOLATION OF PAROLE. (a) Any paroled convict or inmate who has been returned to the custody of the commissioner of correction or any institution of the department of correction for violation of his parole may be retained in the institution from which he was paroled for a period equal to the unexpired portion of the term of his sentence at the date of the request or order for his return less any commutation or diminution of his sentence earned except that the board of parole may, in its discretion, determine that he shall forfeit any or all of such earned time, or may be again paroled by said board. (b) Each parolee or inmate, subject to the provisions of section 18-7, shall be subject to loss of all or any portion of time earned."

provisions of General Statutes § 54-127,[8] a parole violation warrant was issued and lodged at the correctional center in Litchfield ordering his arrest and return to prison under his sentence of October 3, 1967. He was held there on the breaking and entering charge, bail being set at $15,000, which he was unable to obtain. After December 30, 1968, when the parole violation warrant was lodged, he could not have been released from custody even if he had posted the bail required on the breaking and entering charge but would have been retained in custody as a parole violator. On April 24, 1969, on the breaking and entering charge, he received a sentence of not less than two nor more than four years in the state prison to run concurrently with the first sentence on which he had been paroled. The court concluded that from December 30, 1968, when the parole violation warrant was issued and lodged, Mancinone was in lawful custody under the sentence of October 3, 1967, that he was entitled to and received credit on that sentence for the 118 days he was in custody, and that the provisions of § 18-98 do not apply to a parole violator who is confined and against whom a parole violation warrant has been lodged because even if such a parole violator were able to raise bail he would not be released from custody. The court, accordingly, overruled Mancinone's claim of law that he was entitled to credit of 118 days on his sentence of April 24, 1969, notwithstanding the fact that he did receive credit for those days on his previous sentence of October 3, 1967. Whether this was a correct ruling is the sole issue presented for our decision on Mancinone's appeal.

In its memorandum of decision, the court observed: "The court finds that the plaintiff was given

---

[8] See footnote 6, supra.

credit for the time he spent in Litchfield and, therefore, lost no credit time by reason of his incarceration. To decide that he was entitled to additional credit on his subsequent conviction would be rewarding him beyond what he is entitled and the court is unable to reasonably construe the provisions of § 18-98 to accomplish that result, and finds it difficult to believe that the legislature intended to do so."

The facts in the DiLoreto case are somewhat similar. On March 25, 1964, he was sentenced by the Superior Court to jail and also to a term in the state prison for not more than three years as a maximum and not less than one year as a minimum. Execution of the state prison sentence was suspended and he was placed on probation for three years, to commence on his release from jail. On September 29, 1967, the suspension of execution of the sentence was revoked and he was committed to the state prison to serve the prison sentence. At the same time, on another charge, he was also sentenced to the state prison for a term of not more than two years and not less than one year to run concurrently with the 1964 sentence. On September 27, 1968, he was paroled on both sentences. On February 7, 1969, while on parole, he was arrested and charged with robbery with violence, theft of a motor vehicle and larceny. He was confined at the correctional center in Bridgeport and on March 7, 1969, a parole violation warrant was issued and lodged at the correctional center ordering his arrest and return to the state prison under his earlier sentences. He was unable to furnish bond from February 7 to May 16, 1969. On May 16, 1969, in the Superior Court for Fairfield County, he was found guilty of the crime of robbery with violence and sentenced to imprisonment for a term of not more than

nine years and not less than four years, to be served concurrently with the unexpired portion of the earlier sentences. Commutation time for the ninety-eight days between the arrest on February 7, 1969, and the issuance of the mittimus on May 16, 1969, was duly noted on the mittimus issued May 16, 1969, and DiLoreto was credited with that time on the sentence on which he had been paroled. He was, however, denied any commutation credit on the sentence imposed on May 16, 1969. In the present habeas corpus proceeding which was instituted in December, 1970, the court concluded that the lodging of the parole violation warrant at the jail did not revoke or suspend the parole and, accordingly, under the provisions of General Statutes § 18-98 as it read in May, 1969, as a matter of statutory right, since DiLoreto was unable to obtain bail, he was entitled to commutation time for the days from February 7, 1969, to May 16, 1969, on the sentence imposed on the latter date. In so concluding, the court overruled the respondent's claim of law that the provisions of §§ 18-97 and 18-98 do not apply to a parolee who is arrested while on parole and who is denied or unable to obtain bail, if a parole violation warrant is issued and lodged against him pursuant to the provisions of § 54-127 of the General Statutes.

Although §§ 18-97 and 18-98 both concern situations where one is held in custody pending trial on a criminal charge, there are two basic differences in the circumstances in which either statute will apply. Section 18-97 applies only to cases where the accused has been in custody "under a mittimus." Section 18-98 applies whether or not custody is pursuant to the direction of a mittimus. Section 18-98 is applicable only if the accused "has been denied bail or has been unable to obtain bail." Section 18-97 has no

such requirement. Although an accused might be entitled to the benefit of the provisions of both statutes, this is not necessarily so. An obvious example is a situation where an accused, although able to furnish bail, declines to do so. In such a circumstance he would not qualify for the benefits of § 18-98 since he was not "unable to obtain bail." If, however, he was thereupon committed for want of bail he would be entitled to the benefit of § 18-97 since he would then be in custody "under a mittimus."

In considering the relevant statutes, we find no ambiguity or reason to seek any legislative intent not plainly indicated in the language used. "We must construe and apply the statute as we find it, without reference to whether we think it would have been or could be improved by the inclusion of other provisions." *Granniss* v. *Weber,* 107 Conn. 622, 630, 141 A. 877. Under the provisions of § 18-97 any person receiving a sentence "shall receive credit towards any portion . . . of such sentence as to which execution is not suspended for any days spent in custody under a mittimus as a result of any court proceeding for the offense or acts for which such . . . sentence is imposed." The decisive criterion is that the person must have spent days "in custody under a mittimus." Similarly, under the provisions of § 18-98 the decisive criterion is that the person be one "who has been denied bail or who has been unable to obtain bail and who is subsequently imprisoned." It may well be, as counsel for the defendant argues, that in adopting these statutes the legislature did not intend that a parole violator in the circumstances of these two plaintiffs should receive credit for time served in custody on the original sentence and also equal credit on any sentence imposed for a

new offense. It may not have envisaged such situations where a person would be held in custody as a parole violator in addition to custody under a mittimus or for lack of bail. Nevertheless, the legislature did not restrict the operation of the statutes to circumstances where either the existence of a mittimus or lack of bail was the *sole* reason for custody. "It is not for us to search out some intent which we may believe the legislature actually had and give effect to it, but we are confined to the intention which is expressed in the words it has used." *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 301, 57 A.2d 128. Each of the plaintiffs in these cases comes within the precise language in which the legislature enacted its directive. If it had wished to exclude from the operation of the statutes those who would not be released from custody even if they posted bail that exception could easily have been spelled out.

We have no choice but to interpret the statutes as they are written. "It is a cardinal rule of construction that statutes are to be construed so that they carry out the intent of the legislature. This intent is to be ascertained from the language of the statute itself, if the language is plain and unambiguous. *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36; *Landry* v. *Personnel Appeal Board,* 138 Conn. 445, 447, 86 A.2d 70. Where the legislative intent is clear, there is no room for statutory construction. *Little* v. *Ives,* 158 Conn. 452, 455, 262 A.2d 174; *State ex rel. Cooley* v. *Kegley,* 143 Conn. 679, 683, 124 A.2d 898; *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 207, 91 A.2d 773." *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 376, 279 A.2d 561. " 'We must construe the act as we find it, without reference to whether we think it would have been or could be im-

proved by the inclusion of other provisions.' *Murphy* v. *Way,* 107 Conn. 633, 639, 141 A. 858. Courts may not by construction supply omissions in a statute, or add exceptions merely because it appears to them that good reasons exist for adding them." *State* v. *Nelson,* 126 Conn. 412, 416, 11 A.2d 856.

There is error in *Mancinone* v. *Warden, Connecticut State Prison,* the judgment is set aside and the case is remanded with direction to render judgment directing the defendant to credit the plaintiff on the sentence imposed on him on April 24, 1969, for the 118-day period he was in custody awaiting trial from December 27, 1968, to April 24, 1969. There is no error in *DiLoreto* v. *Warden, Connecticut State Prison.*

In this opinion the other judges concurred.