### STATE OF CONNECTICUT *v.* ANONYMOUS (1974–4)*

#### SUPERIOR COURT

BARBER, J. The defendant has moved to dismiss the first and third counts of the information, each charging a sale of marihuana in violation of Public Act 74-332 § 2 (b), which became effective May 30, 1974.[1] The motion alleges that the act is unconstitu-

---

* Opinions on preliminary motions in criminal cases are thus entitled, in view of General Statutes § 54-90.

[1] Public Act No. 74-332 § 2 amends General Statutes § 19-480 as follows: "PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. . . . (b) Any person who . . . sells . . . to another person any controlled substance other than a hallucinogenic substance other than marihuana, or a narcotic substance except as authorized in this chapter, may, for the first offense, be fined not more than one thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned . . . ."

tionally vague and indefinite. The court will treat this motion, as have the parties, as a motion to quash. See *State* v. *DiBella,* 157 Conn. 330, 335; *State* v. *Barles,* 25 Conn. Sup. 103, 106.

The defendant particularly contends that General Statutes § 19-480 (b), as now amended by Public Act No. 74-332 § 2, does not make criminal the sale of marihuana. It is true that due process requires that a penal statute be sufficiently explicit to inform those who are subject to it of the conduct which it penalizes. *State* v. *Moore,* 158 Conn. 461, 465; *State* v. *Zazzaro,* 128 Conn. 160, 167.

A careful reading of Public Act 74-332 in its entirety reveals that the 1974 session of the General Assembly sought to amend chapter 359 of the General Statutes, dealing with dependency-producing drugs, in order to provide a more proper scale of penalties for various offenses.

An analysis of § 2 of Public Act 74-332 clearly discloses that the objective of subdivision (b) is to prohibit the manufacture, sale and so forth of "any controlled substance." This general objective is modified and limited by the words, "other than a hallucinogenic substance other than marihuana." It is noted that there is no punctuation before the second "other than," thereby indicating that what follows modifies "hallucinogenic substance" and not "any controlled substance." The words "other than" constitute a functional phrase to indicate a difference of kind or identity. Webster, Third New International Dictionary. Public Act 74-332, as it amends General Statutes § 19-443 (7) and (29), in § 4 redefines "Cannabis-type drugs" and in § 5, "Marihuana." These amendments were prompted by the recent decision in *United States* v. *Collier,* 14 BNA Crim. L. Rep. 2501 (D.C. Super. Ct., Mar. 19, 1974),

according to remarks made on the floor of the house when the matter was first reported. H.R. Proc., 1974 Sess., p. 3140 (Apr. 23, 1974).

The defendant argues that marihuana is not classified as a "hallucinogenic drug" in General Statutes § 19-443 (29) and that this makes the law confusing. The defendant has overlooked the definition of "controlled substance" in § 19-443 (9), which makes reference to § 19-450a, which, in subdivision (a) (C) (10), lists marihuana as a hallucinogenic substance. Authorities claim that marihuana is distinguishable from other hallucinogenic drugs, although it produces much the same effects. Bonnie & Whitebread, "The Forbidden Fruit and the Tree of Knowledge: An Inquiry into the Legal History of American Marijuana Prohibition," 56 Va. L.R. 971, 1108.

Statutes are to be construed so that they carry out the intent of the legislature. This intent is to be ascertained from the language of the statute itself, if the language is plain and unambiguous. *Mancinone* v. *Warden,* 162 Conn. 430, 439. It is necessary to look also to the basic policy as disclosed by pre-existing legislation and the circumstances which brought about the amendment of the law under consideration. *State* v. *Moreno,* 156 Conn. 233, 239; *Lee* v. *Lee,* 145 Conn. 355, 358. A radical departure from an established policy cannot be implied. *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 667. The legislative history and policy of our General Assembly have been to remedy the mischief of marihuana sales. Statements made on the floor of the General Assembly are strong indications of legislative intent. *Harris* v. *Planning Commission,* 151 Conn. 95, 100; *Sullivan* v. *Town Council,* 143 Conn. 280, 287.

In its original form, subdivision (b) of § 2 of substitute House Bill 5681, as reported out of committee on April 17, 1974, did not contain the words "other than marihuana." On the floor of the house, however, it was pointed out that General Statutes § 19-450a (a) (C) (10) includes marihuana under hallucinogenic substances, and an amendment was offered to exclude marihuana from the hallucinogenic category as it applied to the bill. H.R. Proc., 1974 Sess., p. 3146 (Apr. 23, 1974). The amendment passed and became a part of the bill, which was reprinted as file No. 543 and subsequently became Public Act 74-332.

Public Act 74-332 deals with a complex subject which has engendered much controversy and change, not only in law enforcement but also in experimental studies and findings since the Narcotic Drugs Act was first enacted in this state in 1935. See Bonnie & Whitebread, supra. The provisions of our laws now dealing with dependency-producing drugs are not as simple and as easily understood as perhaps they should be. The language, the history and the legislative intent surrounding the passage of Public Act 74-332 § 2 (b) lead, however, to but one conclusion. That is that its meaning is not unconstitutionally vague or uncertain but it clearly by fair purport and meaning includes marihuana as a prohibited item.

Accordingly the motion to dismiss the first and third counts of the information is denied.