MATHIAS LIISTRO *v.* CARL ROBINSON, WARDEN, CONNECTICUT CORRECTIONAL INSTITUTION, SOMERS

CLIFTON DOWDY *v.* RICHARD WEZOWICZ, WARDEN, COMMUNITY CORRECTIONAL CENTER, HARTFORD

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued October 9, 1975—decision released January 27, 1976

*Stephen J. O'Neill,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellants (defendants in both cases).

*Richard S. Cramer,* for the appellee (plaintiff in the first case).

*Robert T. Statchen,* for the appellee (plaintiff in the second case).

HOUSE, C. J. Although these two cases are not, strictly speaking, companion cases, they reached our docket simultaneously, were argued at the same session and involve the same controlling question of law. We have, under the circumstances, decided to consider them in a single written opinion. Both are appeals from judgments of the Superior Court granting petitions for writs of habeas corpus and setting bail in each case in the amount of $25,000 pending the appearance of the plaintiff parolees at full parole revocation hearings. The sole assignment of error in each case is that the court erred in concluding that the plaintiff was entitled to

have the court set bail pending his appearance at a parole revocation hearing before the board of parole.

The appeals raise the question as to whether the state violates the equal protection clause of the fourteenth amendment to the constitution of the United States by expressly extending the right to bail to alleged probation violators under § 53a-32[1] of the General Statutes while not similarly granting the right under the provisions of §§ 54-126 and

---

[1] Enacted as 1969 Public Act No. 828, § 32, and amended in subsection (b) only by 1971 Public Act No. 871, § 12:

"[General Statutes, Rev. to 1975] Sec. 53a-32. VIOLATION OF PROBATION OR CONDITIONAL DISCHARGE: ARREST; PROCEDURE. (a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. Such written statement, delivered with the defendant by the arresting officer to the official in charge of any correctional center or other place of detention, shall be sufficient warrant for the detention of the defendant. After making such an arrest, such probation officer shall present to the detaining authorities a similar statement of the circumstances of violation. Provisions regarding release on bail of persons charged with a crime shall be applicable to any defendant arrested under the provisions of this section. Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain

54-127 [2] of the General Statutes to alleged parole violators who are awaiting parole revocation hearings.

The facts in each case have been stipulated. Liistro, on March 7, 1972, was sentenced to two concurrent sentences, each for not less than two nor more than five years, for the crimes of robbery and aggravated assault. On July 6, 1973, he was paroled. On October 25, 1974, he was served with

counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.

"(b) If such violation is established, the court may continue or revoke the sentence of probation or conditional release or modify or enlarge the conditions, and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by reliable and probative evidence."

[2] "[General Statutes §§ 54-126 and 54-127. Rev. to 1975] Sec. 54-126. RULES AND REGULATIONS CONCERNING PAROLE. Said board of parole may establish such rules and regulations as it deems necessary, upon which such convict may go upon parole, and the panel for the particular case may establish special provisions for the parole of a convict. The commissioner of correction shall enforce such rules, regulations and provisions and retake and reimprison any convict upon parole, for any reason that such panel, or the commissioner with the approval of the panel, deems sufficient; and the commissioner may detain any convict or inmate pending approval by the panel of such retaking or reimprisonment."

"Sec. 54-127. REARREST. The request of said commissioner, or any officer of the department of correction so designated by the commissioner, or said board of parole or its chairman shall be sufficient warrant to authorize any officer of the department of correction, or any officer authorized by law to serve criminal process within this state, to return any convict or inmate on parole into actual custody; and any such officer, police officer, constable or sheriff shall arrest and hold any parolee or inmate when so requested, without any written warrant, and, for the performance of such duty, the officer performing the same, except officers of said department, shall be paid by the state, through the department of correction, such reasonable compensation as is provided by law for similar services in other cases."

a "Notice of Parole Violation" charging a violation of the conditions of his parole, in that he did not "completely abstain from the use of alcoholic beverages. . . ." Following a preliminary hearing by the parole division of the Connecticut department of corrections on November 5, 1974, pursuant to *Morrissey* v. *Brewer,* 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484, the hearing officer found probable cause to believe that the plaintiff had violated conditions of his parole. On November 27, 1974, Liistro was served with a "Notice of Revocation Hearing" providing, in part, that a hearing was scheduled before the board of parole for December 10, 1974, to determine whether parole should be revoked. On December 10, 1974, the hearing was commenced but, on request of the plaintiff's counsel who discovered that he required more time properly to represent the plaintiff, the hearing was continued until the next hearing date on January 14, 1975. Meanwhile, on November 19, 1974, in the Circuit Court the plaintiff was found guilty of the crime of disorderly conduct and was sentenced to confinement for twenty days. Upon completion of that sentence, he remained incarcerated in the Connecticut correctional institution, Somers, awaiting his continued hearing before the board of parole. He thereupon filed and was granted the habeas corpus petition seeking to be released on bail until the hearing.

Dowdy, on September 25, 1970, was sentenced to not less than five nor more than twelve years for robbery with violence. On April 30, 1974, he was paroled. On August 8, 1974, he was arrested for violation of the statute concerning possession or sale of controlled substances. He was again arrested on October 21, 1974, this time for robbery in the first

degree. Shortly thereafter, on October 29, 1974, Dowdy was served with a "Notice of Parole Violation" charging a violation of the conditions of his parole in that he had a gun in his possession. Following a preliminary hearing on November 14, 1974, pursuant to *Morrisey* v. *Brewer,* supra, the hearing officer found probable cause to believe that the plaintiff had violated conditions of his parole. Thereupon, on November 19, 1974, a warrant for reimprisonment was issued ordering the plaintiff's arrest and return to custody as a parole violator. A hearing was scheduled before the board of parole for March 11, 1975. The plaintiff was incarcerated in the community correctional center, Hartford, awaiting his hearing. At the time he was granted the habeas corpus petition on February 13, 1975, allowing him to be released on bail until the hearing, both criminal charges were still pending, with bond in each case set at $2500 which the plaintiff was ready, willing and able to meet.

Certification to appeal in both cases was granted pursuant to § 52-470 of the General Statutes. Following their respective hearings, parole for both plaintiffs was revoked and subsequently both have been reparoled. Despite the fact that neither plaintiff has an immediate interest in the outcome, we have decided to consider the defendants' appeals. The single issue involved is one which is "capable of repetition, yet evading review." *Southern Pacific Terminal Co.* v. *Interstate Commerce Commission,* 219 U.S. 498, 515, 31 S. Ct. 279, 55 L. Ed. 310; see *Doe* v. *Bolton,* 410 U.S. 179, 93 S. Ct. 739, 35 L. Ed. 2d 201; *Roe* v. *Wade,* 410 U.S. 113, 125, 93 S. Ct. 705, 35 L. Ed. 2d 147. It directly affects the ongoing parole program of the state's penal system, and could very well affect the plaintiffs

who are now reparoled. Hence, practical relief can follow directly from our decision and "the public importance of the question involved makes it desirable that we decide the point." *Winnick* v. *Reilly,* 100 Conn. 291, 296, 123 A. 440.

The plaintiffs claim, and the respective Superior Courts (*J. Shea, J.,* and *Alexander, J.*) held, that since § 53a-32 of the General Statutes permits bail for alleged probation violators, bail must also be permitted for alleged parole violators in order to satisfy the requirements of the equal protection clause of the fourteenth amendment to the constitution of the United States. The court, in *Liistro,* relied upon the decision in *Gagnon* v. *Scarpelli,* 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656, and *United States ex rel. Dereczynski* v. *Longo,* 368 F. Sup. 682 (N.D. Ill., E.D.), affirmed without published opinion, 506 F.2d 1403 (7th Cir.). The court, in *Dowdy,* cited the above two cases but rested its analysis on the court's rationale in *Liistro.*

We begin by observing that if a parolee has a right to bail while awaiting a parole revocation hearing, such a right must flow from the eighth or fourteenth amendments to the federal constitution, the state constitution, state statutes, or the common law. See *In re Law,* 10 Cal. 3d 21, 513 P.2d 621; *Genung* v. *Nuckolls,* 292 So. 2d 587 (Fla.); *State* v. *Lawrence,* 133 Vt. 330, 340 A.2d 67. There is no per se federal constitutional right to bail under these circumstances. See *Argro* v. *United States,* 505 F.2d 1374 (2d Cir.); *Roberson* v. *Connecticut,* 501 F.2d 305, 308 (2d Cir.); *Hamilton* v. *New Mexico,* 479 F.2d 343 (10th Cir.); *Bloss* v. *Michigan,* 421 F.2d 903, 905 (6th Cir.); *In re Whitney,* 421 F.2d 337 (1st Cir.); *United States ex rel. Fink* v.

*Heyd,* 287 F. Sup. 716 (E.D. La.), aff'd, 408 F.2d 7 (5th Cir.), cert. denied, 396 U.S. 895, 90 S. Ct. 192, 24 L. Ed. 2d 172. The court in *Argro* v. *United States* (p. 1377) did "think there may be adequate ground to support its [bail] grant in unusual cases, at least in a bona fide inquiry into whether a parole revocation is being conducted pursuant to due process. See *Baker* v. *Sard,* 137 U.S. App. D.C. 139, 420 F.2d 1342 (1969); *Johnston* v. *Marsh,* 227 F.2d 528 (3 Cir. 1955)."[3] However, neither plaintiff in the cases before us claims any violation of his due process rights. There is likewise no per se state constitutional right to bail in Connecticut under these circumstances. *State* v. *Menillo,* 159 Conn. 264, 269, 268 A.2d 667; *State* v. *Vaughan,* 71 Conn. 457, 460–61, 42 A. 640.

As we have observed, §§ 54-126 and 54-127 of the General Statutes contain no express authorization for the release on bail of alleged parole violators. This court has held that the Superior Court possesses the common-law powers formerly exercised by the Court of King's Bench to "admit to bail in all cases on consideration of the nature and circumstances of the case"; *State* v. *Vaughan,* supra, 461; but, as there noted, "[t]his power continues after

[3] At least one case has held that denial of bail to a parolee as a matter of policy violates the federal constitution. "This court has recently been admonished to give individual consideration to speedy trial applications and not attempt to do justice 'in wholesale lots,' *Wallace* v. *Kern,* 499 F.2d 1345 (2d Cir. 1974). The blanket policy of the State Board of Parole, holding all suspected violators in custody until full determination of state criminal charges, is a way of doing injustice at wholesale. The federal constitution at least requires that every parole violator be treated as an individual, and not denied bail as a matter of policy. Cf. *United States* v. *Hartford,* 489 F.2d 652, 655–656 (5th Cir. 1974); *United States* v. *Baker,* 487 F.2d 360 (2d Cir. 1973)." *United States ex rel. Napoli* v. *New York,* 379 F. Sup. 603, 606 (E.D. N.Y.).

conviction and after judgment, so long as the prisoner is in the custody of the court, but in most cases ceases when he is taken in execution." In the present cases, both plaintiffs were taken in the execution and were parolees subject not to the further jurisdiction of the court which imposed sentence but to the authorities at the Connecticut correctional institution, Somers, to which institution they were sentenced, and to the jurisdiction of the board of parole, "an autonomous body . . . within the department of correction for fiscal and budgetary purposes only." General Statutes § 54-124a et seq. Hence the plaintiffs' claims are predicated and must and do rely solely upon the equal protection of the laws clause of the fourteenth amendment to the constitution of the United States.

"Equal protection analysis must commence with a determination of whether a legislative classification . . . impinges upon a fundamental right. Where the legislation impinges upon a fundamental right . . . it must be struck down unless justified by a compelling state interest. *Dunn* v. *Blumstein,* 405 U.S. 330, 335, 342, 92 S. Ct. 995, 31 L. Ed. 2d 274. Where the statute does not involve fundamental rights . . . the legislation will withstand constitutional attack if the distinction is founded on a rational basis. *McGinnis* v. *Royster,* 410 U.S. 263, 270, 93 S. Ct. 1055, 35 L. Ed. 2d 282; *Dandridge* v. *Williams,* 397 U.S. 471, 484, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491; *F. S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989; *In re Application of Griffiths,* 162 Conn. 249, 258, 294 A.2d 281, rev'd, 413 U.S. 717, 93 S. Ct. 2851, 37 L. Ed. 2d 910; see *Douglas* v. *California,* 372 U.S. 353, 358, 83 S. Ct. 814, 9 L. Ed. 2d 811." *Laden* v. *Warden,* 169 Conn. 540, 542, 363 A.2d 1063. The

post-conviction "right to bail" claimed by the plaintiffs who were already serving sentences to confinement imposed by the court is not mandated by the federal or Connecticut constitutions, Connecticut statutes or common law and hence is not a right, much less a fundamental right. Accordingly, the equal protection clause is satisfied if there is some rational and reasonable basis for a distinction between parole revocation and probation revocation. *Laden* v. *Warden,* supra.

The plaintiffs maintain that under either the traditional "rational basis" test, or the more stringent "strict scrutiny" test, the state cannot justify providing bail for probationers while denying it to parolees. The cases they cite are not persuasive. In *Morrissey* v. *Brewer,* 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484, the United States Supreme Court held that a state could not revoke parole without affording the parolee minimal due process safeguards. The court extended these *Morrissey* due process safeguards in toto to the case of an alleged probation violator; *Gagnon* v. *Scarpelli,* 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656; see also *State* v. *White,* 169 Conn. 223, 239, 363 A.2d 143; and the plaintiffs make no claim that they were not afforded due process of law. In their briefs, both plaintiffs quote a footnote from *Gagnon.* The footnote is dropped from the following statement (p. 782) in the opinion: "Petitioner does not contend that there is any difference relevant to the guarantee of *due process* between the revocation of parole and the revocation of probation, nor do we perceive one." (Emphasis supplied.) The footnote, obviously referring to due process rather than equal protection of rights, states: "Despite the undoubted minor differences between probation

and parole, the commentators have agreed that revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from revocation of parole." *Gagnon* v. *Scarpelli,* supra, 782 n.3. Both briefs omitted references to the court's citation of authority for the footnote comment—55 J. Crim. L.C. & P.S. 175, 198 n.182, and Van Dyke, "Parole Revocation Hearings in California: The Right to Counsel," 59 Cal. L. Rev. 1215, 1241–43. An examination of those articles clearly discloses that with the exception in the second article of a single reference (p. 1243) to a dissenting opinion of one judge which mentions the equal protection clause the commentators were discussing not equal protection of the laws rights (with which we are concerned in the present cases) but due process rights attendant upon probation and parole revocation hearings. See, generally, *United States* v. *Farmer,* 512 F.2d 160 (6th Cir.); *Argro* v. *United States,* 505 F.2d 1374, 1376 (2d Cir.); *United States ex rel. Vance* v. *Kenton,* 252 F. Sup. 344 (D. Conn.); *State* v. *Roberson,* 165 Conn. 73, 80, 327 A.2d 556.

To read *Morrissey* v. *Brewer,* supra, and *Gagnon* v. *Scarpelli,* supra, as requiring identical treatment of probationers and parolees when due process rights are not involved is, we believe, to read them too broadly. "We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. Cf. *Mempa* v. *Rhay,* 389 U.S. 128 . . . [88 S. Ct. 254, 19 L. Ed. 2d 336]." *Morrissey* v. *Brewer,* supra, 480. Further, the court, in *Morrissey,* clearly contemplated that a parolee would be confined from the time of his arrest as

an alleged violator until the parole revocation hearing. "There is typically a substantial time lag between the arrest and the eventual determination by the parole board whether parole should be revoked." *Morrissey* v. *Brewer,* supra, 485. It was this very concern with the expected confinement that caused the court to require procedural guarantees in the form of a preliminary hearing before an independent officer. *Morrissey* v. *Brewer,* supra. Since the court, as in *Goldberg* v. *Kelly,* 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287, significantly did not require that a judicial officer be the independent hearing officer; *Morrissey* v. *Brewer,* supra, 486; we do not read that decision as requiring bail by court intervention. That the United States Supreme Court assumed confinement would continue beyond an unfavorable decision for the parolee at the preliminary hearing, up to the time of the parole revocation hearing, is clearly illustrated by its statement that "[t]he revocation hearing must be tendered within a reasonable time after the parolee is *taken into custody.* A lapse of two months, as respondents suggest occurs in some cases, would not appear to be unreasonable." (Emphasis added.) *Morrissey* v. *Brewer,* supra, 488. In *Gagnon* v. *Scarpelli,* supra, 782, the court merely applied these constitutional due process rights to a probationer, the court not perceiving and the appellant not contending that there was "any difference relevant to the guarantee of *due process* between the revocation of parole and the revocation of probation." (Emphasis added.)

"When a question of constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear [citations omitted]." *Snyder* v.

*Newtown,* 147 Conn. 374, 390, 161 A.2d 770; see *Lublin* v. *Brown,* 168 Conn. 212, 219, 362 A.2d 769. As we have noted, a probationer is expressly granted the right to bail; General Statutes § 53a-32;[4] whereas the corresponding parole sections are silent on the right to bail. General Statutes §§ 54-126 and 54-127.[5] The legislative histories of the two statutes are not informative except for a comment that § 53a-32 "is based largely on prior law (Section 54-114) and practice." Commission to Revise the Criminal Statutes, "Commentary on Title 53a [Public Act No. 828, 1969 Session of the General Assembly], The Penal Code."[6] This court has recognized the practice of denying bail to alleged parole violators. *Mancinone* v. *Warden,* 162 Conn. 430, 435, 294 A.2d 564. Substantial differences in status between probationers and parolees do exist. A probationer is subject to judicial control and "the court may modify or enlarge" the conditions of probation. General Statutes §§ 53a-29 to 53a-34. On the other hand, a parolee is subject not to judicial

---

[4] General Statutes § 53a-32, entitled "Violation of probation or conditional discharge: Arrest; procedure," provides in part that "[p]rovisions regarding release on bail of persons charged with a crime shall be applicable to any defendant arrested under the provisions of this section." See footnote 1 for the complete language.

[5] See footnote 2.

[6] This commission was provided by Special Act No. 351 of the 1963 Session of the General Assembly and Special Act No. 314 of the 1965 Special Session of the General Assembly. Section 54-114, the forerunner of § 53a-32, contains the identical bail provision as set forth in footnote 4, supra. The bail language, with no relevant recorded comment, was first adopted in Public Acts 1957, No. 287, § 2. This act ostensibly was passed merely to reinstate the power of arrest in probation officers, which had been repealed by mistake. It repealed § 3340d of the 1955 Supplement which contained no bail language and substituted the 1957 version which not only restored the probation officers' power of arrest but also added the bail provision. See 7 Conn. H. Proc., pt. 4, 1957 Sess., pp. 1928-29; 7 Conn. S. Proc., pt. 4, 1957 Sess., p. 2101.

control but to the administrative control of the parole board. General Statutes §§ 54-124a to 54-131. Probation is granted because the sentencing court is of the opinion that confinement is not necessary for the protection of the public and probation provides a better chance of rehabilitation, whereas parole is technically a custody status. § 53a-29. These differences which bear a reasonable and just relation to parole and probation status provide a rational basis for distinguishing between alleged probation violators and alleged parole violators insofar as the availability of bail is concerned. See *Laden* v. *Warden,* 169 Conn. 540, 363 A.2d 1063; *Kellems* v. *Brown,* 163 Conn. 478, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678; *State* v. *Delgado,* 161 Conn. 536, 290 A.2d 338.

Essentially the same equal protection claim now made by the plaintiffs was made in *United States ex rel. Dereczynski* v. *Longo,* 368 F. Sup. 682, 688, a decision by a judge of the United States District Court for the Northern District of Illinois, affirmed without published opinion, 506 F.2d 1403 (7th Cir.). The plaintiffs and the Superior Courts relied on the authority of that case. The judge in *Dereczynski,* however, did not specifically decide the constitutional issue, but, although noting that the parole statutes involved in that case were silent on the right to bail, whereas the probation statutes permitted bail, nevertheless construed the parole statutes to provide for bail. *United States ex rel. Dereczynski* v. *Longo,* supra, 688. We do not follow such a practice of judicial legislation but, rather, follow the principle that "[w]e have no choice but to interpret the statutes as they are written." *Mancinone* v. *Warden,* 162 Conn. 430, 439, 294 A.2d 564.

"Courts may not by construction supply omissions in a statute, or add exceptions merely because it appears to them that good reasons exist for adding them." *State* v. *Nelson,* 126 Conn. 412, 416, 11 A.2d 856. In considering the relevant statutes, we find no ambiguity or reason to seek any legislative intent not plainly indicated in the language used. Clearly the General Assembly has granted to an alleged probation violator a right to bail pending a revocation hearing but has not granted such a right to a parolee who is charged with violation of the terms of his parole as fixed by the parole board. We conclude, accordingly, that neither plaintiff had a right to release on bail pending his revocation hearing and that in each case the Superior Court was in error in concluding that it was required to grant the petition for a writ of habeas corpus. Our decision reiterates the separate magistracies and responsibilities of the legislative and judicial departments. *Stern* v. *Stern,* 165 Conn. 190, 199 n.4, 332 A.2d 78.

There is error in both cases, the judgments are set aside and both cases are remanded to the Superior Court for further proceedings in the light of this decision and the present factual situation as that court finds it to exist.

In this opinion LOISELLE, LONGO and BARBER, Js., concurred.

BOGDANSKI, J. (dissenting). The equal protection clause of the fourteenth amendment to the United States constitution does not prohibit a state from granting privileges to specified classes of persons where sufficient reason exists; but where advantages are conferred upon some, the state must justify its denial to others by reference to a legitimate ground for distinction. *Thompson* v. *Shapiro,* 270

F. Sup. 331, 338 (D. Conn.), aff'd, 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600; *Sanger* v. *Bridgeport*, 124 Conn. 183, 189, 198 A. 746. Any classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *F. S. Royster Guano Co.* v. *Virginia*, 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989. Thus, in the present case, the proper inquiry for this court is whether there are any differences between probationers whose liberty is threatened by revocation and parolees whose liberty is threatened by revocation which could justify the legislature in allowing bail pending a revocation hearing for one group but not for the other.

The United States Supreme Court has recently stated: "Despite the undoubted *minor* differences between probation and parole, the commentators have agreed that revocation of probation where sentence has been imposed previously is *constitutionally* indistinguishable from the revocation of parole. See, e.g., Van Dyke, Parole Revocation Hearings in California: The Right to Counsel, 59 Calif. L. Rev. 1215, 1241–1243 (1971); Sklar, Law and Practice in Probation and Parole Revocation Hearings, 55 J. Crim. L.C. & P.S. 175, 198 n.182 (1964)." (Emphasis supplied.) *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782 n.3, 93 S. Ct. 1756, 36 L. Ed. 2d 656. The majority have restricted the meaning of "constitutionally" in that statement to "for due process purposes" by indicating that the court's specific citations of authority in support of that statement are primarily concerned with due process rights. The use of the introductory signal, "See, e.g.," preceding the authorities cited, however, signifies that

the court also based its statement upon the views of other commentators, and that the articles cited are but examples of those views. Several noteworthy articles published contemporaneously with those cited discuss at length the inability to distinguish between probation and parole revocation under the equal protection clause. See, e.g., Cohen, "Due Process, Equal Protection and State Parole Revocation Proceedings," 42 U. Colo. L. Rev. 197, 225–28; comment, "Revocation of Probation and Parole in Nebraska — A Procedural Antithesis," 48 Neb. L. Rev. 220, 242–47.

The majority opinion states that "substantial" differences exist between the status of probationers and parolees. It is noteworthy that the United States Supreme Court has expressly recognized the differences to be minor. The first "difference" pointed out by my brethren is that a parolee is not subject to judicial control whereas a probationer is. That is undoubtedly true. If bail were to be accorded to a parolee, however, the courts and not the parole board would make the relevant determination. The second "difference" suggested is that "[p]robation is granted because the sentencing court is of the opinion that confinement is not necessary for the protection of the public and probation provides a better chance of rehabilitation, whereas parole is technically a custody status." Despite the fact that a parolee is technically in the custody of the parole board, the paramount consideration in granting either parole or probation is the determination whether the parolee or probationer would constitute a threat to the welfare of society.[1] Each

[1] General Statutes § 53a-29 states that a court may sentence a person to probation if it believes that "(1) Present or extended institutional confinement of the defendant is not necessary for the protection of the public; (2) the defendant is in need of guidance,

case essentially requires a determination that the convicted person is a "good risk." Van Dyke, "Parole Revocation Hearings in California: The Right to Counsel," 59 Cal. L. Rev. 1215, 1243. "Although the granting of limited freedom to the convicted person is made by different decision-makers, the effect is the same: . . . [he] remains subject to the power of the state and can be ordered back to prison should he violate the conditions under which he has been released." Id., 1240.

In Connecticut, strong similarities exist between the position of a parolee and that of a probationer. Each has been convicted of a crime and is subject to the strict control of a governmental official. General Statutes §§ 53a-30 (a), 54-126. The parolee must always spend time in a correctional institution, while the probationer may be incarcerated prior to probation. General Statutes §§ 53a-28 (b) (c), 53a-39. Both are subject to the Uniform Act for Out-of-State Parolee Supervision. General Statutes §§ 54-132—54-138. If either is charged with violating parole or probation, the proof required to revoke is substantially less than that required in a criminal trial. *State* v. *Roberson,* 165 Conn. 73, 327 A.2d 556. During the period of parole or probation either may be completely discharged upon a showing of "good cause" or that he "will lead an orderly life." General Statutes §§ 53a-33, 54-129.

---

training or assistance which, in his case, can be effectively administered through probation supervision; and (3) such disposition is not inconsistent with the ends of justice."

General Statutes § 54-125 indicates that the parole board may grant parole if "(1) it appears from all available information, including such reports from the commissioner of correction as such panel may require, that there is reasonable probability that such inmate will live and remain at liberty without violating the law and (2) such release is not incompatible with the welfare of society."

The only real distinction in status between a probationer and parolee alluded to by the majority is that different persons administrate the systems under which their liberty is determined. In order for a difference in status to provide grounds for a difference in treatment, the difference must have a substantial relation to the object of the legislation. See, e.g., *F. S. Royster Guano Co.* v. *Virginia,* supra. My colleagues have simply asserted that the differences "provide a rational basis for distinguishing between probation violators and parole violators insofar as the availability of bail is concerned." They are saying in essence that the fact that parolees and probationers are liberated by different agents of the state provides a rational ground for allowing bail for one and not for the other.

"Red things may be associated by reason of their redness, with disregard of all other resemblances or of distinction. Such classification would be logically appropriate. Apply it further: make a rule of conduct depend upon it and distinguish in legislation between red-haired men and black-haired men and the classification would immediately be seen to be wrong; it would only have arbitrary relation to the purpose and province of legislation." *Tanner* v. *Little,* 240 U.S. 369, 382, 36 S. Ct. 379, 60 L. Ed. 691. The fact that parole and probation systems have different administrators has only arbitrary relation to legislation which would allow bail to one group and deny it to another.[2] Administra-

---

[2] "Fictions of 'custody' and the like that have been created by statute or court decisions cannot change the reality of a parolee's conditional freedom and cannot affect the constitutional protections surrounding his interest in that conditional freedom." *Rose* v. *Haskins,* 388 F.2d 91, 98 n.2 (6th Cir.) (opinion of *Celebrezze, J.,* dissenting).

tive efficiency cannot justify abridgment of basic constitutional rights. *United States* v. *Fay*, 247 F.2d 662, 669 (2d Cir.).

The primary purpose of bail is to ensure the future presence of the person at the time when his presence is required. See, e.g., 8 Am. Jur. 2d, Bail and Recognizance, § 4. A relevant consideration in deciding whether to grant bail, particularly in the case of post-conviction bail, is whether the freedom of the person convicted would constitute a threat to the welfare and safety of society. That determination is one for the trial court to make on the facts of each case. There are no differences between parolees and probationers which would justify the legislature in making the determination that society needs protection from parolees but not from probationers, when both have previously been considered "good risks."

"Therefore, although neither the probationer nor the parolee has an Eighth Amendment right to bail pending revocation hearings, we find that if one group may be so privileged, then so must the other, and that the pertinent Illinois statutes so read," said the court in the case of *United States ex rel. Dereczynski* v. *Longo,* 368 F. Sup. 682, 689, (N.D. Ill., E.D.) aff'd 506 F.2d 1403 (7th Cir.). That case presented facts almost identical to those of the present case. The pertinent Illinois statutes allowed bail for probationers but were silent as to the right to bail of parolees. Relying upon *Gagnon* v. *Scarpelli,* supra, the court held (p. 688): "We are mindful of maintaining proper respect for the legislature as a coordinate branch of government, and proper judicial restraint requires a presumption of constitutionality of . . . [the parole

statutes]. Since this section is silent on the right to bail, we construe . . . [it] to be the analogue to . . . [the probation statute], and construe it to say that the court may admit the offender to bail pending the hearing."

It is not unreasonable, considering the presumption of constitutionality and the lack of an express parolee bail provision, to construe § 54-127 to be the analogue of § 53a-32. I would, therefore, find no error in the trial courts' decisions.