JOHN JONES *v.* WARDEN, COMMUNITY CORRECTIONAL CENTER, NEW HAVEN

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued January 5—decision released May 16, 1978

*Stephen J. O'Neill,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Sue L. Wise,* for the appellee (plaintiff).

LOISELLE, J. The plaintiff filed a habeas corpus petition in the Superior Court in New Haven, alleging that as a result of a mittimus issued by a judge of the Superior Court, he was being held illegally in a community correctional center. From a judgment ordering the defendant to strike the mittimus from his administrative records upon the plaintiff's execution of a promise to appear, unless the state held a hearing, the defendant has appealed.

The facts of the case as found by the court are not disputed: The plaintiff was arrested on June 2, 1976, on a narcotics charge. He was presented to the Court of Common Pleas and bound over to the Superior Court with bond set at $5000, which was subsequently reduced to $2500. A surety bond in the amount of $2500 was posted on the plaintiff's behalf on July 7 by a licensed professional bondsman for a fee of $170 in cash. On October 1, while the plaintiff was released on bond on the narcotics charge, in an unrelated case he was sentenced by the Court of Common Pleas to serve consecutive terms of three months each on two larceny convictions. On October 12, while the plaintiff was incarcerated for the larceny convictions, the bondsman appeared before a judge of the Superior Court, in chambers, and requested a discharge from his obligations as surety to the plaintiff pursuant to General Statutes §§ 52-319 and 54-65 because he believed that the plaintiff intended to abscond. Under oath the bondsman gave as reasons for his belief that the plaintiff had failed to appear

to answer charges in the Court of Common Pleas in cases in which an associate of the bondsman was surety; that the plaintiff's mother and aunt, who were guarantors on the bond in those cases, had tried to take the plaintiff to court but he ran away; and that they requested help from the two bondsmen, who finally caught the plaintiff after a chase.

Neither the plaintiff nor his counsel was notified of the bondsman's intention to seek discharge of his obligations on the bond. Consequently, no opportunity to contest the application for discharge was afforded the plaintiff. No one but the judge and the bondsman was present at the hearing on the bondman's application, and no record or finding was made.

The judge on October 12 ordered the clerk of the Superior Court to issue a mittimus for the arrest and commitment of the plaintiff to a community correctional center, with bond set at $2500. As the plaintiff was already serving time in a correctional center on the larceny convictions, the immediate effects of the mittimus were to discharge the bondsman, to make the plaintiff ineligible for holiday furloughs and other release privileges while serving his sentence on the larceny convictions, and to hold him for trial on the narcotics charge at the expiration of the confinement portion of his sentence on January 5, 1977.

Although the plaintiff's bond was reduced from $2500 to $2000 on his motion, he lacked the funds to pay another bondsman's fee. The plaintiff's constitutional claim was first advanced in his application for a writ of habeas corpus. The trial court concluded that while the bondsman and the judge acted properly under General Statutes §§ 52-319 and

54-65, those statutes are unconstitutional as violative of the due process clauses of the state and federal constitutions. The court ordered the defendant to strike the mittimus from his administrative records upon the plaintiff's promise to appear in court on the narcotics charge, unless the state provided the plaintiff with a hearing before a judge within seven days and as a result of the hearing the judge found that the plaintiff in fact intended to abscond.

The initial issue to be addressed is that of mootness. Counsel stipulated to the fact that subsequent to the trial court's judgment and while this appeal was pending, the plaintiff pleaded guilty to a lesser narcotics charge and was awaiting sentencing. It is argued that the controversy has, therefore, been rendered moot. We agree.

"It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22; *Harkins* v. *Driscoll,* 165 Conn. 407, 409, 334 A.2d 901; *Roy* v. *Mulcahy,* 161 Conn. 324, 328, 288 A.2d 64. The question becomes, therefore, "what, if any, practical relief could follow from a determination of the . . . [defendant's] appeal or what actual relief could be granted by this court." *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 452, 352 A.2d 291.

Because the plaintiff has already pleaded guilty to the charge for which he had posted bond, whatever relief an opinion of this court could have

afforded the defendant is no longer relevant. The defendant's authority to hold the plaintiff under the mittimus, which was successfully challenged by the habeas corpus petition, is no longer the basis for the plaintiff's confinement. Consequently there exists no possibility that this opinion would afford the defendant any practical relief. The case, lacking in actual controversy, is moot.

The appeal is dismissed as moot, and the trial court is directed so to note on its records.

In this opinion House, C. J., and Speziale, J., concurred.

Longo, J. (dissenting.) Although the plaintiff may no longer have an immediate interest in the outcome of this case, I am persuaded that we should reach the merits of his constitutional claim. It falls squarely within the class of grievances that are capable of repetition yet evading review unless the mootness barrier is lifted. Moreover, the plaintiff's claim directly affects the administration of bail by the trial courts of this state. Practical relief can follow from our decision and the public importance of the question makes it desirable that we decide it. The same considerations recently moved this court to entertain a statutory challenge to parole release hearings, even though the plaintiff was eventually paroled prior to the perfection of his appeal; *Taylor* v. *Robinson,* 171 Conn. 691, 694, 372 A.2d 102; and to entertain a constitutional challenge to the denial of bail pending the outcome of parole revocation proceedings, despite the fact that by the time the case was argued parole for the plaintiffs had been revoked and then granted again; *Liistro* v. *Robinson,* 170 Conn. 116, 121–22, 365 A.2d 109. I fail to see why this case should be treated differently.

On the merits, there is no question that the bonds-man's resort to General Statutes § 52-319,[1] made applicable to sureties in criminal proceedings by General Statutes § 54-65,[2] constituted state action sufficient to invoke the due process protections of the federal and state constitutions, if some liberty or property interest of the plaintiff was injured thereby. An accused who has managed to post bond with surety has acquired a valuable, albeit limited, freedom of movement. Surely that interest qualifies as liberty protected by the federal and state due process clauses. While the statutory procedures challenged in this appeal did not result in revocation of the plaintiff's bail or in the imposition of addi-tional conditions of release, it cannot be denied that their operation had serious consequences for his liberty. The immediate effects of the mittimus issued on October 12 were to make the plaintiff ineligible for holiday furloughs and other release privileges while serving his sentence for the larceny convictions and to strip him of his right to be

---

[1] "[General Statutes] Sec. 52-319. RIGHTS OF SURETY. Any surety who has entered into a recognizance for the personal appearance of another, and afterwards believes that his principal intends to abscond, may apply to a judge of the superior court or the court of common pleas, produce his bail bond, or evidence of his being surety, and verify the reason of his application by oath or other-wise, and thereupon such judge shall forthwith grant a mittimus, directed to a proper officer or indifferent person, commanding him forthwith to arrest such principal and commit him to a community correctional center; and the community correctional center adminis-trator shall receive such principal and retain him in a community correctional center until discharged by due order of law. Such surrender of the principal shall be a full discharge of the surety upon his bond or recognizance."

[2] "[General Statutes] Sec. 54-65. SURETY MAY SURRENDER HIS PRINCIPAL. Any surety in a recognizance in criminal proceedings, who believes that his principal intends to abscond, may have the same remedy, and proceed and be discharged in the same manner, as sureties upon bail bonds in civil actions."

released at the expiration of the confinement portion of his sentence, unless he once again posted bond with surety on the narcotics charge. This injury to the plaintiff's constitutionally protected liberty interest was sufficient to call due process into play. An accused whose bondsman has been discharged by order of a court will not readily find another willing to take the risk.

Although an accused does not have a constitutional right to a bond he can afford, or to require that a particular bondsman provide or continue on his bond, I would hold that he does have a constitutional right to procedural due process when the state endangers his liberty by offering his bondsman an opportunity to be discharged. This conclusion is supported by a trilogy of recent United States Supreme Court decisions holding that the federal due process clause governs the revocation of parole, *Morrissey* v. *Brewer,* 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484; the revocation of probation, *Gagnon* v. *Scarpelli,* 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656; and the denial of good-time credits for prisoners, *Wolff* v. *McDonnell,* 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935.

The central meaning of procedural due process is clear: parties whose rights are to be affected are entitled to notice and a hearing. *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 376–77, 362 A.2d 778. Since General Statutes §§ 52-319 and 54-65 afford an accused neither notice nor hearing on his surety's application for discharge, no searching analysis is needed to conclude that they are unconstitutional beyond a reasonable doubt. The deficiencies in the statutes are all the more glaring in the light of the notice and

hearing afforded an accused by Practice Book, 1963, § 2084 and § 2085, which authorize a bail commissioner to apply to a judicial authority for review of conditions of release.

BOGDANSKI, J. (dissenting.) I agree with the dissent of my colleague, *Longo, J.,* and would add additional reasons to those already advanced.

Sections 52-319 and 54-65, pursuant to which the application was made to the judge in chambers, do not call for the exercise of any discretion on the part of the judge or for the performance of any judicial function. To the contrary, they specifically call for the performance of a purely administrative act by a judge of either the Superior Court or the Court of Common Pleas. In essence, the statutes provide that "such judge shall forthwith grant a mittimus" upon being presented with the surety's belief that his principal intends to abscond. This clearly calls for a simple ministerial act.[1]

The separation of powers provision of the state constitution precludes the legislature from providing for the performance of administrative or other nonjudicial duties by a judge of any court in the course of, or as an incident to, judicial proceedings. *Adams* v. *Rubinow,* 157 Conn. 150, 158, 251 A.2d 49; *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 602, 37 A. 1080.

---

[1] The way the statutes presently read, they could have been directed to a clerk of the court or some other clerical official.