MARK M. DELEVIELEUSE *v.* JOHN R. MANSON, COMMISSIONER OF CORRECTION

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued March 6—decision released June 16, 1981

*Jon C. Blue,* for the appellant (plaintiff).

*Stephen J. O'Neill,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant).

BOGDANSKI, C. J. As a result of court proceedings for seven larceny counts, the plaintiff spent fifty-six days in presentence custody under a mittimus containing one docket number. Each of the seven counts related to one of seven stolen checks. The plaintiff wrongfully took the seven checks on a single occasion and subsequently cashed each one separately, forging the payor's name and keeping the proceeds of each transaction. On August 17, 1979, he pleaded guilty to all seven counts and received a six month sentence on each count. The court ordered that the first five sentences run consecutively to one another and that the sixth and seventh sentences run concurrently with the first five. Thus, the total effective sentence was thirty months.

For the fifty-six days of presentence custody, the defendant credited the plaintiff with having served fifty-six days of his total effective sentence. In doing so, the defendant followed the advice of the attorney general and allocated jail time credit once for each docket number contained in the mittimus. Complaining that he had not received the full credit required by General Statutes §18-97,[1] the

[1] General Statutes § 18-97 provides, in part: "Any person receiving . . . a sentence to a correctional institution or a community correctional center shall receive credit towards . . . any

plaintiff applied for a writ of habeas corpus. He asserted that General Statutes § 18-97 entitles inmates to credit toward each of their separate sentences for the entire time in presentence custody. The Superior Court interpreted the statute to forbid any multiple credit and rendered judgment for the defendant. From that judgment the plaintiff has appealed.

The plaintiff has finished serving his sentence. Although this is not a class action, the parties have stipulated that the issue before us affects approximately 200 inmates and both parties join in requesting this court to decide the issue.

" 'It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow.' *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22; *Phaneuf* v. *Commissioner of Motor Vehicles,* 166 Conn. 449, 452, 352 A.2d 291; *Harkins* v. *Driscoll,* 165 Conn. 407, 409, 334 A.2d 901; *Roy* v. *Mulcahy,* 161 Conn. 324, 328, 288 A.2d 64; Maltbie, Conn. App. Proc. § 21. In the absence of an actual and existing controversy for us to adjudicate . . . the courts of this state may not be used as a vehicle to obtain judicial opinions upon points of law; *Reply of the Judges,* 33 Conn. 586; and where the question presented is purely academic, we must refuse to entertain the appeal. *Young* v. *Tynan,* 148 Conn. 456, 459, 172 A.2d 190." *Connecticut*

portion of such sentence as to which execution is not suspended for any days spent in custody under a mittimus as a result of any court proceeding for the offense or acts for which such . . . sentence is imposed."

*Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 19, 411 A.2d 1 (1979). See *Manor Development Corporation* v. *Conservation Commission,* 180 Conn. 692, 695, 433 A.2d 999 (1980).

In *Liistro* v. *Robinson,* 170 Conn. 116, 365 A.2d 109 (1976), and *Taylor* v. *Robinson,* 171 Conn. 691, 372 A.2d 102 (1976), we reached the merits of claims that inmates were entitled to bail pending the outcome of parole proceedings and that the Uniform Administrative Procedure Act; General Statutes §§ 4-166 through 4-189; applied to parole release hearings, even though the plaintiffs had been granted parole before we considered the appeals. Those cases could afford practical relief because the issues involved (1) were capable of repetition, yet evading review; (2) affected an ongoing program of the state's penal system; and (3) could very well affect the plaintiffs should they be convicted in the future. *Taylor* v. *Robinson,* supra, 694–95. We also noted that (4) the public importance of the questions made it desirable to decide the points. Id., 694, citing *Winnick* v. *Reilly,* 100 Conn. 291, 296, 123 A. 440 (1924). Those four considerations control the present appeal.[2]

[2] We disapprove *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 21, 411 A.2d 1 (1979), to the extent it is inconsistent with *Taylor* v. *Robinson,* 171 Conn. 691, 372 A.2d 102 (1976). We observe that *Taylor* v. *Robinson,* supra, noted the similarity of its circumstances to *Weinstein* v. *Bradford,* 423 U.S. 147, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975), but specifically declined to follow that case which *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* supra, 20–21, quoted as the source for its "reasonable expectation" requirement. *Connecticut Foundry Co.* did not overrule *Taylor* v. *Robinson* or establish divergent mootness standards in parole and labor cases. Furthermore, *Connecticut Foundry Co.* did not discuss the extent to which the public importance of a question compensates for the reduced weight of other factors that militate against the mootness of the question.

438

General Statutes § 18-97 provides: "Any person receiving . . . a sentence to a correctional institution or a community correctional center shall receive credit towards . . . any portion of such sentence as to which execution is not suspended for any days spent in custody under a mittimus as a result of any court proceeding for the offense or acts for which such . . . sentence is imposed." The purpose of § 18-97 "is to give recognition to the period of presentence time served and to permit the prisoner, in effect, to commence serving his sentence from the time he was compelled to remain in custody due to a mittimus." *Holmquist* v. *Manson,* 168 Conn. 389, 393–94, 362 A.2d 971 (1975).

The plaintiff asserts that his thirty month effective sentence comprises five consecutive and two concurrent six month sentences and that he is entitled to fifty-six days of presentence custody credit on each sentence which goes to make up his total effective sentence. Each of the plaintiff's crimes was a larceny in the third degree, a class B misdemeanor; see General Statutes § 53a-124; for which the maximum sentence is a term of six months. General Statutes § 53a-36(2). A sentence of thirty months cannot be imposed for any one of the plaintiff's individual crimes. The plaintiff, therefore, received seven distinct and separate "sentences."

In interpreting "the language of a legislative enactment, '[w]e are confined to the intention which is expressed in the words which the legislature has used.' *Baston* v. *Ricci,* 174 Conn. 522, 528, 391 A.2d 161 (1978). ' "The intention of the legislature is found not in what it meant to say, but in the meaning of what it did say." *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452, 364 A.2d

167 (1975).'" *Luttrell* v. *Luttrell,* 184 Conn. 307, 310, 439 A.2d 981 (1981); see *Lukas* v. *New Haven,* 184 Conn. 205, 212–13, 439 A.2d 949 (1981). The legislature's repeated use of the unmodified singular noun "sentence" leads us to conclude that General Statutes § 18-97 requires that the plaintiff receive fifty-six days of jail time credit on each sentence.

We agree with the trial court that nothing in General Statutes § 18-97 supports the defendant's argument that the number of docket numbers assigned to the charges against an inmate controls the computation of jail time credit. The trial court's rule against multiple credit, however, overlooks *Mancinone* v. *Warden,* 162 Conn. 430, 294 A.2d 564 (1972), which interpreted General Statutes § 18-97 to compel the award of multiple jail time credit to inmates who were held simultaneously as both parole violators and under a mittimus issued for offenses committed while on parole. Although concurrent sentences had been imposed in *Mancinone* v. *Warden,* supra, we did not cite that factor as having any effect on our decision. Furthermore, General Statutes § 18-97 does not distinguish between consecutive and concurrent sentences.

General Statutes § 18-97 contrasts with the statute relating to multiple sentences, § 53a-37, which states: "When multiple sentences of imprisonment are imposed on a person at the same time, or when a person who is subject to any undischarged term of imprisonment imposed at a previous time by a court of this state is sentenced to an additional term of imprisonment, the sentence or sentences imposed by the court shall run either concurrently or consecutively with respect to each other and to

the undischarged term or terms in such manner as the court directs at the time of sentence. The court shall state whether the respective maxima and minima shall run concurrently or consecutively with respect to each other, and shall state in conclusion the effective sentence imposed. . . ." A careful reading of these statutes demonstrates that the terms "sentence" and "effective sentence" are technical terms which refer to different things. The use of the unmodified singular noun "sentence" in § 18-97 requires each day of presentence jail time to be credited against each individual sentence received in disposition of the charges on which the inmate was held under a mittimus. If the legislature had meant such presentence jail time to be credited only against the one "effective sentence" that the individual ultimately receives, it would have said so. In fact the legislature has chosen to make the "effective sentence" the standard by which "good time"[3] is computed. General Statutes § 18-7 provides that "[w]hen any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn under the provisions of this section." The fact that the legislature explicitly chose to make the "effective sentence" the benchmark for "good time" under § 18-7 strengthens the usual inference that it did not omit the word "effective" from § 18-97 by inadvertence.[4]

---

[3] Under the provisions of General Statutes § 18-7, after receiving a sentence inmates may hasten their release by good conduct and obedience to the rules of the correctional institution.

[4] Although the views of a subsequent legislature form a hazardous basis for inferring the intent of an earlier one; *City of Milwaukee* v. *Illinois,* 451 U.S. 304, 332n, 101 S. Ct. 1784, 68 L. Ed. 2d 114

General Statutes § 18-97 required that the plaintiff receive a jail time credit of fifty-six days on each of his seven sentences. The credit on his two concurrent sentences applied concurrently. Therefore General Statutes § 18-97 requires the defendant to apply against the plaintiff's total effective sentence a credit of 280 days.

There is error, the judgment is set aside and the case is remanded with direction to credit the plaintiff on each sentence with jail time in accordance with this opinion.

In this opinion PETERS, PARSKEY and ARMENTANO, Js., concurred.

ARTHUR H. HEALEY, J. (dissenting). I would not reach the merits of this appeal because I believe the appeal is moot. This court has recently adopted

(1981); *Consumer Product Safety Commission* v. *G.T.E. Sylvania, Inc.*, 447 U.S. 102, 117–18, 100 S. Ct. 2051, 64 L. Ed. 2d 766 (1980); we note that the legislature recently has made General Statutes § 18-97 inapplicable to offenses committed on or after July 1, 1981, and has enacted General Statutes § 18-98d which grants credit for presentence confinement resulting from an offense committed on or after July 1, 1981. In the course of the senate's consideration of substitute house bill 6021, "An Act Revising The Sentencing Laws," Senator Salvatore DePiano successfully offered senate amendment schedule A, by which, for the first time, the legislature specified that "each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed after such presentence confinement. His amendment also delayed the effective date of the sentencing bill from October 1, 1980 to July 1, 1981. In urging passage of the amended bill, Senator DePiano said "[T]his bill . . . makes it so that anybody that is being held prior to being convicted cannot get good time for every charge that is pending against him that has a different docket number. Under the present procedure today, if you are charged with several crimes and they all have different docket numbers, every day you wait for trial when you have not made bond, means that you have gotten two or three or four days credit for that one day that you've served

and adhered to the principle, expounded by the United States Supreme Court; see *Weinstein* v. *Bradford,* 423 U.S. 147, 149, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975); that, in the absence of a class action, a case is not moot if, inter alia, there is a " 'reasonable expectation that the *same complaining party* would be subjected to the same action again.' " *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 21, 411 A.2d 1 (1979);[1] see *CEUI* v. *CSEA,* 183 Conn. 235, 249–50, 439 A.2d 321 (1981); *DeFonce Construction Corporation* v. *Connecticut Resources Recovery Authority,* 177 Conn. 472, 475, 418 A.2d

and we've eliminated that problem." 23 S. Proc., Pt. 10, 1980 Sess., p. 3429. Although we reject Senator DePiano's opinion that the number of docket numbers controls jail time credit, the passage of his amendment indicates legislative intent both to change from a system which awarded multiple credit for jail time and not to implement that change for crimes committed before July 1, 1981. See *New Haven Commission on Equal Opportunities* v. *Yale University,* 183 Conn. 495, 502, 439 A.2d 404 (1981).

[1] We specifically stated that, "in the absence of a class action, the 'capable of repetition, yet evading review' doctrine was limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was reasonable expectation that the *same complaining party* would be subjected to the same action again." *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 20–21, 411 A.2d 1 (1979), quoting *Weinstein* v. *Bradford,* 423 U.S. 147, 149, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975).

In *Connecticut Foundry,* supra, the defendants, although conceding that their appeal may have been moot, urged us to address the issue raised in their appeal and "to provide a definitive interpretation of the statute in question so as to preclude the recurrence of any similar dispute in the future and to protect labor generally from the abuses of unrestrained issuance of injunctions in industrial controversies." Id., 20. We dismissed the appeal as moot, holding that such a reason was insufficient to meet the "capable of repetition, yet evading review" standard since the record before us was "devoid of any evidence demonstrating the existence of a 'reasonable expectation' that these defendants will again be subjected to the action complained of here." Id., 21.

906 (1979); *Rosnick* v. *Zoning Commission,* 172 Conn. 306, 309, 374 A.2d 245 (1977). Even if we are to assume, as the majority notes, that *Connecticut Foundry* did not overrule our two earlier cases, *Taylor* v. *Robinson,* 171 Conn. 691, 372 A.2d 102 (1976), and *Liistro* v. *Robinson,* 170 Conn. 116, 365 A.2d 109 (1976), in those cases we specifically noted that the issue to be resolved "might well" or "could very well" affect the plaintiffs. See *Taylor* v. *Robinson,* supra, 695; *Liistro* v. *Robinson,* supra, 121–22.

Even under a very liberal interpretation of the "reasonable expectation" standard, I fail to see how the plaintiff in this case may well be subject to the same statute in question, i.e., General Statutes § 18-97, when, as the statute now provides, and as the majority opinion points out in footnote 4, the statute is not applicable to offenses committed on or after July 1, 1981. Absent an indication in the record before us to the contrary, there is little, if any, chance that the plaintiff will again be subject to the statute he now challenges. Moreover, this same observation applies to the other unnamed inmates referred to in the majority opinion. It is my view that the parameters of the "reasonable expectation" standard, as elucidated in our prior cases, are so broadened by the majority as to blur the predictable limitations of the mootness doctrine.

Therefore, I dissent and would dismiss this matter as moot.