MICHAEL GUIDA *v.* COMMISSIONER OF CORRECTION (14262)

PETERS, C. J., SHEA, CALLAHAN, GLASS, COVELLO, BORDEN and BERDON, Js.

Argued December 3, 1991—decision released March 10, 1992

*John W. Watson,* assistant public defender, for the appellant (petitioner).

*Stephen J. O'Neill,* assistant attorney general, with whom were *Steven R. Strom,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellee (respondent).

PER CURIAM. This is an appeal by the petitioner, Michael Guida, from the denial of his petition for a writ of habeas corpus challenging, on ex post facto grounds, his ineligibility for supervised home release. The respondent is the commissioner of correction for the state of

Connecticut. We conclude that the petitioner's appeal, which was transferred to this court pursuant to Practice Book § 4023, should be dismissed because the petitioner failed to demonstrate aggrievement and lacks standing to pursue the appeal.

The relevant facts, which are undisputed, are as follows. On December 4, 1987, the petitioner was sentenced to a term of imprisonment of sixteen years, suspended after eight years, and five years probation,[1] for attempted assault in the first degree with a deadly weapon or dangerous instrument committed on March 5, 1987. General Statutes §§ 53a-59 (a) (1),[2] 53a-49 (a).[3] At the time the offense was committed, a person convicted and sentenced for the crime charged was not disqualified for consideration for the supervised home release program administered by the respondent, pursuant to General Statutes § 18-100.

Subsequent to the petitioner's commission of the crime, the legislature adopted General Statutes § 18-100b; see Public Acts 1988, No. 88-244, § 3;[4] to

[1] On the same date, the petitioner was sentenced to a concurrent one year sentence for reckless endangerment committed on February 22, 1987. That sentence is irrelevant to the petitioner's claim.

[2] General Statutes § 53a-59 provides in pertinent part: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[3] General Statutes § 53a-49 provides in pertinent part: "CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[4] Public Acts 1988, No. 88-244, § 3, was codified at General Statutes (Rev. to 1989) § 18-100b, which provided: "RELEASE OF CERTAIN PRISONERS INTO SUPERVISED HOME RELEASE PROGRAMS PROHIBITED. Notwithstanding any provision of the general statutes, the commissioner of

implement certain restrictions with respect to eligibility for supervised home release. Thereafter, the respondent adopted regulations and the legislature amended § 18-100b[5] to forbid consideration for supervised home

correction shall not release from confinement any prisoner convicted of a capital felony, as defined in section 53a-54b, or a class A felony, into a supervised home release program as provided in section 18-100."

[5] "[General Statutes] Sec. 18-100b. RELEASE OF PRISONERS TO AN APPROVED COMMUNITY RESIDENCE. ELIGIBILITY. (a) Notwithstanding any provision of the general statutes, the commissioner of correction shall not release from confinement to an approved community residence pursuant to subsection (e) of section 18-100, any prisoner convicted of a capital felony, as defined in section 53a-54b, a class A felony, a class B felony committed while such prisoner was released from confinement to an approved community residence pursuant to subsection (e) of section 18-100, or a violation of section 21a-278, 21a-278a, 53a-54d, 53a-55, 53a-55a, 53a-56, 53a-56a, 53a-56b, 53a-57, 53a-58, 53a-59, 53a-70, 53a-70a or 53a-70b, or any prisoner convicted of any other offense for which there is a mandatory minimum sentence which may not be suspended or reduced by the court until such time as such prisoner has served such mandatory minimum sentence, or any prisoner convicted and incarcerated for more than one year for a violation of section 21a-277, which offense occurs on or after October 1, 1990, who has previously been convicted and incarcerated for a violation of section 21a-277, 21a-278 or 21a-278a.

"(b) Except as provided in subsection (d) of this section, the commissioner of correction shall not release from confinement to an approved community residence pursuant to subsection (e) of section 18-100 any prisoner who is convicted and incarcerated for an offense which occurs on or after October 1, 1991, unless such prisoner has served at least twenty-five per cent of the definite sentence imposed.

"(c) Except as provided in subsection (d) of this section, the commissioner of correction shall not release from confinement to an approved community residence pursuant to subsection (e) of section 18-100 any prisoner who is convicted and incarcerated for an offense which occurs on or after October 1, 1992, unless such prisoner has served at least forty per cent of the definite sentence imposed.

"(d) On and after October 1, 1991, and prior to July 1, 1993, the commissioner of correction may petition the advisory commission, established under section 18-87f, to waive the provisions of subsections (b) and (c) of this section requiring a prisoner to serve a minimum percentage of his definite sentence prior to being released to an approved community residence in order to avoid an emergency release of inmates. The advisory commission shall notify the commissioner of correction in writing of the approval of such waiver and such waiver shall remain in effect for thirty days. The commissioner of correction, upon receiving notice of such approval, may

release to inmates convicted of, among other crimes, assault in the first degree in violation of § 53a-59, and to inmates serving a mandatory minimum term. The respondent applied the regulations and the amended § 18-100b to the petitioner's request for supervised home release.

The testimony before the habeas court was that the respondent did not contemplate that a conviction of *attempted* assault in the first degree, in itself, prevented the consideration of an inmate for the supervised home release program under the amended statute and the regulations. The petitioner, however, had been convicted of an attempt to commit a violation of § 53a-59 (a) (1), a crime that required the imposition of a mandatory minimum sentence of five years. General Statutes § 53a-59 (b).[6] Under the amended § 18-100b and the regulations, the petitioner, therefore, was ineligible for consideration for supervised home release until he had completed his mandatory minimum term. The petitioner argues that the adoption of the regulations and the adoption and amendment of the statute subsequent to his commission of the crime constituted ex post facto enactments that delayed his eligibility for supervised home release and thereby "chang[ed] the punishment, and inflict[ed] a greater punishment, than the law annexed to the crime, when committed." *Calder* v. *Bull*, 3 U.S. (3 Dall.) 386, 390 (1798).

release a sufficient number of prisoners, otherwise eligible to be released to an approved community residence, to reduce the inmate population below one hundred ten per cent of capacity.

"(e) Notwithstanding any provision of the general statutes, the commissioner of correction shall not release from confinement any prisoner to an approved community residence after June 30, 1993."

[6] General Statutes § 53a-59 (b) provides: "Assault in the first degree is a class B felony provided any person found guilty under subdivision (1) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

At the habeas corpus proceeding, Todd Fisk, the community services administrator for the department of correction, testified that under the policies of the respondent in effect in March, 1987, when the petitioner committed the crime for which he was convicted and sentenced, the petitioner would not have been eligible for consideration for supervised home release until he was within eighteen months of his estimated date of release. He also testified that, pursuant to the policies in effect under the amended statute and the regulations adopted by the respondent, the petitioner would have been eligible for consideration for supervised home release on January 28, 1991, when he would have completed the mandatory minimum portion of his sentence and been within thirty-six months of his estimated release date. There was no other testimony or evidence at the hearing as to the petitioner's estimated release date or the date when he would have been eligible for supervised home release consideration under the respondent's 1987 policies.

In his brief, the respondent states that the petitioner's estimated release date at the time of trial was January 14, 1993, and that under the policies in effect in 1987, the petitioner would not have been eligible for consideration for supervised home release until July 19, 1991, a date almost six months later than his eligibility under the amended statute and the adopted regulations. The petitioner did not dispute the respondent's calculations in either his reply brief or at oral argument. We are, therefore, left with a record that is, to say the least, confusing and unclear as to whether the petitioner was in fact disadvantaged in any way by the amendment of § 18-100b and the regulatory policies of the respondent. See *State* v. *Laracuente*, 205 Conn. 515, 520, 534 A.2d 882 (1987), cert. denied, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 913 (1988) (appellant's burden to furnish an adequate record for appeal).

We realize that both current inmates and the respondent wish this court to resolve the issue presented, that is, whether the amendment of § 18-100b and the implementation of new regulations concerning eligibility for supervised home release, subsequent to a crime having been committed, constitute ex post facto violations. In fact, counsel for both parties have asked that we consider the question under *Delevieleuse* v. *Manson,* 184 Conn. 434, 439 A.2d 1055 (1981).[7] The issue is of such a nature that it might very well merit review under *Delevieleuse* in the proper case. Nevertheless, we decline to resolve the question as presented in this case, where it is uncertain, and unlikely, that this petitioner, in fact, ever suffered any disadvantage by the amendment of the statute and the implementation of the new regulations.[8] To decide the issue on this record would trivialize the Great Writ and the appellate process.

The judgment dismissing the petition is affirmed.

[7] In *Delevieleuse* v. *Manson,* 184 Conn. 434, 437, 439 A.2d 1055 (1981), we held that an issue on appeal may be considered even if resolution can afford no practical relief to the particular appellant if "the issues involved (1) were capable of repetition, yet evading review; (2) affected an ongoing program of the state's penal system; and (3) could very well affect the plaintiffs should they be convicted in the future."

[8] The petitioner has since been released from prison on parole and the chance that his status will be affected by a decision in this appeal is extremely remote.