[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On December 6, 1999, the petitioner filed a pro se petition for a writ of habeas corpus, which was amended on March 1, 2001 and again amended on July 5, 2001. In his Second Amended Petition, the petitioner has made the following claims, as enumerated in the operative complaint: 1) that the CT Page 6048 respondent has failed to credit the petitioner's current sentence with a total of 2,038 days of statutory and meritorious good time; 2) that the respondent's failure to properly construe the petitioner's term of confinement and award the 2,038 days claimed in Count One violates the petitioner's right to equal protection of the law as guaranteed by theFourteenth Amendment to the U.S. Constitution and Article I, §§ 8 and10 of the Connecticut Constitution; 3) that the respondent has failed to credit the petitioner's current sentence both with 120 days of butstandingly meritorious performance award (hereinafter "OMPA") credit as well as 429 days of seven-day job credit; 4) that the failure to award the 549 days claimed in Count Three violates the petitioner's right to equal protection of the law as guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, §§ 8 and 10 of the Connecticut Constitution; and 5) that the respondent's failure to credit the petitioner's current sentence with a total of 2,587 days has resulted in the petitioner being unjustly confined for over two years and has violated the petitioner's right to be free from deprivation of liberty without due process of law as guaranteed by the Fourteenth Amendment of the U.S. Constitution and Article I, §§ 8 and 10 of the Connecticut Constitution.[1] 2nd Am. Pet. The respondent raises the defense that the Department of Correction has correctly calculated the petitioner's sentences. Ret. to 2nd Am. Pet., at 3.
The parties filed comprehensive briefs both prior to and after the December 19, 2001 trial, at which the only witness was Mary Jane Steele, Records Specialist II for the Department of Correction. The parties have entered into a joint stipulation of facts; Pet'r Ex. A; which was orally supplemented at the trial. Tr. (Dec. 19, 2001), at 3 and 76. Before beginning its discussion of the claims, the Court will reiterated the facts jointly stipulated to, as orally supplemented during the habeas trial.[2]
 JOINT STIPULATION OF FACTS
Sentence One:
1. On February 10, 1972, the petitioner was sentenced to five consecutive terms of thirty days each on docket numbers CR9-19747, CR9-19399, CR9-19562, CR9-19417, CR9-19400 for an aggregate sentence of 150 days.
2. This 150 day sentence started on February 10, 1972.
3. On May 25, 1972, the petitioner was still being held under this 150 sentence. CT Page 6049
Sentence Two:
4. On May 25, 1972, the petitioner was sentenced to three terms of not less than seven years and not more than fourteen years on docket numbers CR-8761, CR-8760 and CR-8766, to run concurrently with each other and with his previous sentence for a total effective sentence of seven-to-fourteen years.
5. This 7-14 year sentence began on May 25, 1972.
6. On September 13, 1979, the petitioner was still being held under this 7-14 year sentence.
Sentence Three:
7. On October 17, 1972, the petitioner was sentenced to a term of not less than two and a half and not more than five years to run concurrently with his previously imposed sentences.
8. This 2 1/2 — 5 year sentence started on October 17, 1972.
9. This 2 1/2 — 5 year sentence discharged sometime prior to September 13, 1979.
Sentence Four:
10. On January 11, 1973, the petitioner was sentenced to a term of not less than six and not more than twelve years to run concurrently with his previously imposed sentences.
11. This 6-12 year sentence started on January 11, 1973.
12. On September 13, 1979, the petitioner was still being held under this 6-12 year sentence.
Sentence Five:
13. On January 27, 1977, the petitioner was sentenced to a term of not less than one and not more than four years on docket number CR-5971 to run consecutively with his previous sentences.
14. This 1-4 year sentence began on September 14, 1978.
15. On September 13, 1979, the petitioner was still being held under this 1-4 year sentence. CT Page 6050
Sentence Six:
16. On March 23, 1977, the petitioner was sentenced to a term of 2 years to run concurrently with his previous sentences.
17. This 2 year sentence started on March 23, 1977.
18. This 2 year sentence discharged sometime prior to September 13, 1979.
Sentence Seven:
19. On September 13, 1979, the petitioner was sentenced to two consecutive terms of not less than two and one half years and not more than five years on docket number CR9-43368 (for a total effective sentence of 5-10 years) and to a term of not less than five years and not more than ten years on docket number CR10-103652.
20. Both these 5-10 year sentences ran concurrently with each other and with the petitioner's previously imposed sentences.
21. Both these 5-10 year sentences started on September 13, 1979.
Sentence Eight:
22. On December 12, 1979, the petitioner was sentenced to a term of nine months on docket number 9-45495 to run consecutively to his previously imposed sentences.
23. This 9 month sentence discharged sometime prior to June 14, 1984.
Sentence Nine:
24. On June 14, 1984, the petitioner was sentenced to a term of twenty-five years on docket number CR10-134699 to run concurrently with his prior sentences.
25. This 25 year sentence started on June 14, 1984.
26. On May 16, 1993, the petitioner was still serving this 25 year sentence.
Sentence Ten:
27. On May 26, 1993, the petitioner was sentenced to a term of twenty years on docket number CR10-204657 to run concurrently with his prior sentences. CT Page 6051
28. The petitioner's current time sheet for docket number CR10-204657 reflects no statutory good time earned prior to June 14, 1984.
29. The petitioner's current time sheet for docket number CR10-204657 reflects no meritorious good time (MGT) credit.
30. The petitioner's current time sheet for docket CR10-204657 reflects no outstandingly meritorious performance (OMPA) credit.
31. The petitioner's current time sheet for docket number CR10-204657 reflects no seven-day job credit earned prior to May 26, 1993.
In addition to the written stipulation entered into by the parties, two additional facts were orally stipulated to during the habeas trial. First, that the time sheet for the sentence imposed on June 14, 1984 in docket number 10-134699 entails a credit of 429 days of seven-day job credit between the dates of June 14, 194 and May 26, 1993. Tr. (Dec. 19, 2001), at 3. Second, "that on April 19, 1992, the petitioner was not in a correctional facility at the time but was out on a furlough from a correctional facility at which time the [April 19, 1992 offense] was committed." Id., at 76.
 COUNTS I II
The petitioner argues that "[t]he plain and unambiguous language of General Statutes § 18-7, as interpreted by Rivera v. Commissioner ofCorrection, 254 Conn. 214, [756 A.2d 1264] (2000), requires that statutory good time earned under § 18-7a and its subsections be applied to reduce petitioner's one continuous term of imprisonment. The plain and unambiguous `one continuous term' language of § 18-98b, the statute governing OMPA, should be interpreted consistently with theRivera Court's interpretation of virtually identical language in §18-7. Similarly, the one continuous term requirements of § 18-7
should be extended to § 18-98a, the statute governing employment credit, as the Rivera Court did in an analogous context when interpreting § 18-98d (b), the statute governing pre-sentence confinement good time." Pet'r Post-Trial Br., at 3-4. The respondent, however, contends that "since [the] petitioner was not held as a sentenced prisoner for one continuous term of imprisonment, his arguments that Rivera should apply with regard to his 1972 and 1979 sentences are not based on facts proven at trial, and should be rejected." Resp't Post-Trial Br., at 1.
Clearly, the first issue this Court must address is whether or not the petitioner has been held for one continuous term of confinement from 1972 to the present. The Supreme Court in Rivera noted that "[a]n appropriate CT Page 6052 starting point is General Statutes § 18-7, which provides in relevant part: `Any prisoner sentenced to a term of imprisonment prior to October 1, 1976, may, by good conduct and obedience to the rules of said institution, earn a commutation or diminution of his sentence. When any prisoner is held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation which he may earn under the provisions of this section.'" Rivera v. Commissioner ofCorrection, supra, 254 Conn. 236. "Although § 18-7 makes express reference only to prison sentences imposed prior to October 1, 1976, [the Supreme Court has] concluded that the one continuous term language of § 18-7 also applies to good time credit earned under the provisions of § 18-7a, for sentences imposed on or after October 1, 1976." Id.,
at 236.
The critical threshold that must be met before several terms of imprisonment can be construed as one continuous term for the purpose of estimating the amount of commutation is that the prisoner must be heldunder more than one conviction. In Alexander v. Robinson, 185 Conn. 540,441 A.2d 166 (1981), the petitioner successfully challenged the trial court's dismissal of a petition which had sought to have good time calculated based on the aggregation of a consecutive sentence with two concurrent sentences. The petitioner in Alexander had first been sentenced on the same date to two concurrent terms, and subsequently was sentenced to a term to run consecutive to all sentences presently being served. Id., at 542-3. The Supreme Court, in finding that the trial court had erred, agreed with the petitioner's argument "that the word `held' in [18-7] is not [as] talismanic as the trial court found it to be in saying that because the defendant has not yet begun serving his consecutive sentence, he cannot be regarded as `held' under this sentence under 18-7."Id., at 546.
The Alexander Court found the presence of a mittimus to be dispositive of whether an inmate is being held on a sentence. "The mittimus is the warrant by virtue of which a convict is transported to and rightly held in prison. We have observed that a mittimus after conviction in a criminal case is similar to an execution after judgment in a civil case; it is final process and carries into effect the judgment of the court." (Internal citations omitted.) Id., at 546-7. See also Howard v.Commissioner of Correction, 230 Conn. 17, 22-3, 644 A.2d 874 (1994). The Supreme Court also relied on General Statutes § 54-97, which in relevant part mandates that: "No person may be committed to [a correctional center] without a mittimus signed by the judge or clerk of the court which committed him, declaring the cause of commitment and requiring the warden or . . . administrator to receive and keep him in [custody] . . . for the period fixed by the judgment of said court or CT Page 6053 until he is legally discharged; and such mittimus shall be sufficient authority to the officer to commit such person, and to the warden or . . . administrator to receive and hold him in custody[.]" Alexander v.Robinson, supra, 185 Conn. 547-8.
The petitioner in the present case must show, in order to satisfy the "one continuous term' requirement, that he was held without interruption from 1972 to the present by virtue of one or more mittimuses. A review of the Joint Stipulation of Facts, which comprises ten distinct sentences, indicates that the petitioner discharged from Sentences Three and Six prior to the imposition of a subsequent sentence relevant to determining the `one continuous term' requirement.[3] Thus, Sentences One, Two, Four, Five, and Seven through Ten are the only sentences relevant to determining whether the petitioner was continuously held from 1972 to the present.
On February 10, 1972, the petitioner received Sentence One. The petitioner was still being held under this sentence when Sentence Two was imposed on May 25, 1972. Sentences Four and Five, respectively, were imposed on January 11, 1973 and January 27, 1977. The petitioner was still being held for Sentences Two, Four and Five on September 13, 1979, when the petitioner was received Sentence Seven, Sentence Eight, which ran consecutive to previously imposed sentences, was imposed on December 12, 1979. The petitioner discharged from Sentence Eight sometime prior to June 14, 1984, the date on which Sentence Nine was imposed. The petitioner was still serving Sentence Nine on May 26, 1993, the date Sentence Ten was imposed.
The only gap apparent from the timeline derived from the relevant sentences is the time period from when the petitioner discharged on Sentence Eight to June 14, 1984, when the petitioner received Sentence Nine. Sentence Seven was imposed on September 13, 1979, when the petitioner was sentenced to a total effective sentence of five-to-ten years in two dockets, to run concurrent with each other and with previously imposed sentences. Stip., at 2. Sentence Eight was imposed on December 12, 1979, when the petitioner was sentenced to nine months to serve, consecutive to previously imposed sentences. Id. Clearly, Sentence Seven was such a previously imposed sentence, so that when the petitioner was discharged from Sentence Eight sometime prior to June 14, 1984, he had also been discharged from Sentence Seven prior to June 14, 1984.
Some confusion as to when and if the petitioner was in fact discharged prior to June 14, 1984, however, is created by the timesheets for Sentence Seven.[4] Because the five-to-ten year sentence was an indeterminate sentence, the time sheet's two columns were both used to estimate the projected minimum and maximum release dates. Pet'r Ex. D.[5] The left CT Page 6054 column tracks the projected minimum release date; conversely, the right column tracks the projected maximum release date. Subsequent to Sentence Seven being imposed on September 13, 1979, credits were awarded for statutory good time, pre-sentence jail credit and pre-sentence jail credit good time. The statutory good time awards in both columns were, in accordance with the method then utilized by the Department of Correction, posted up front.[6]
The five-year minimum portion of the sentence was reduced by a total of 841 days and brought the projected minimum release date to May 25, 1982.[7] The ten-year maximum portion of the sentence was reduced by a total of 1,741 days, which brought the projected maximum release date to December 6, 1984.[8] Both columns then contain three entries posted between the months of May-July of 1980 for seven-day job credit, crediting the petitioner with a total of ten days and advancing his projected minimum and maximum release dates, respectively, to May 15, 1982 and November 26, 1984.
The column tracking the projected minimum release date then contains the following two postings: on January 21, 1982, "Denied (3/83)," which changed the projected release date to July 15, 1983; and on March 24, 1983, "Voted to Parole to consecutive + full parole to PENN only." Pet'r Ex. D. The projected minimum release date remained July 15, 1983 after the March 24, 1983 posting to the time sheet. The next five postings for the minimum portion of the sentence are all dated July 15, 1983. The first posting dated July 15, 1983 is "9 Mos Consec." The next posting is "Stat. 90," which changed the release date to January 15, 1984. The third posting is "Jail Time 90," which changed the release date to October 17, 1983. The fourth posting dated July 15, 1983 is "JT/GT 30," which changed the release date to September 17, 1983. The final July 15, 1983 posting is "Parole O/S Pennsylvania." There were two more entries posted on the minimum sentence portion of the time sheet: on December 6, 1983, "Ret NHCC w/charges;" and on February 14, 1984, "Case called."
As already indicated, the portion of the timesheet tracking the projected maximum release date reflects a total of 1,741 days of good time and jail credit, as well as 10 days of 7-day job credit posted between May and July 1980. The next posting, dated July 15, 1983, is "Parole O/S Pennsylvania." Subsequently, there are five postings awarding 7-day job credit: on August 1, 1984, one day; on September 1, 1984, four days; on October 1, 1984, five days; on November 1, 1984, four days; and on November 5, 1984, one day. The projected maximum release date was adjusted to November 11, 1984 as a result of these five 7-day job credit postings. There are no further entries subsequent to November 5, 1984. However, there is a large "X" crossing out all postings made to the maximum sentence portion of the time sheet. CT Page 6055
According to Ms. Steele's testimony, the "X" indicates that there was an error on that half of the time sheet, which was corrected. Tr. (Dec. 19, 2001), at 22, 38 and 41. The corrected time sheet only contains entries on the right side, which tracks the projected maximum release date. Resp't Ex. 1. All postings are identical to the incorrect time sheet with two exceptions: the initial credits posted for jail credit and jail credit good time were, respectively, changed to 362 and 119 days. This doubling of both jail credit and jail credit good time resulted fromDelevieleuse v. Manson, 184 Conn. 434, 439 A.2d 1055 (1981), which held that General Statutes § 18-97 required that pre-sentence jail credit must be awarded on each separate and distinct sentence comprising a total effective sentence. Tr. (Dec. 19, 2001), at 42-3. Credit on concurrent sentences is applied concurrently; conversely, credit on consecutive sentences is applied consecutively. Delevieleuse v. Manson, supra,184 Conn. 441.
Ms. Steele testified that the corrected time sheet is accurate based on the statutes in effect for Sentence Seven, and that the corrected time sheet, when compared to the time sheet containing the "X," "more accurately reflects the statutes for calculation of petitioner's September 13, 1979 sentence[, Sentence Seven]." Tr. (Dec. 19, 2001), at 43. Given that Sentence Seven comprised two consecutive terms of confinement, this Court finds Ms. Steele's testimony regarding the accuracy of the corrected time sheet to be credible. The Court also finds credible her testimony that the date listed under the posting column is the date on which an entry was posted, meaning that the incorrect time sheet was used on November 5, 1984 when the entry posting one day of 7-day job credit to the projected maximum portion of the time sheet was made. Id., at 39. Additional difficulty arises, though, because it is not apparent from either of the time sheets when the correction to the maximum portion of the time sheet was made.
Both the incorrect and the corrected time sheets have November 5, 1984 as the final date on which one day of 7-day job credit was posted. On the incorrect time sheet, the projected maximum release date is November 11, 1984; the corrected time sheet indicates a release date of March 16, 1984. Ms. Steele first testified that she believed the error was realized before November 11, 1984, because "[t]here's another time sheet in the master file very similar to this [incorrect time sheet], with the same writing. I can't tell you when it was actually done, but it's the same style of writing and everything else as in this time sheet here; and there's an error in the jail credit." Id., at 22-3. However, Ms. Steele later reiterated that she could not determine when the correction was made and that it was possible that the correction was made prior to November 11, 1984. Id., at 38. Ms. Steele also testified that the CT Page 6056 corrected time sheet contained information that, with the exception of the corrected jail credit and jail credit good time credits, was "just copied . . . over, . . . probably all in one sitting[.]" Id., at 44.
Additional evidence in this case supports the contention that the petitioner discharged from Sentence Seven on November 11, 1984. Pet'r Ex. F. In a letter dated August 9, 1988, which was written in response to correspondence of August 8, 1988 regarding the petitioner, Mrs. Bryan, then Record Supervisor for the Department of Correction, stated that the petitioner "discharged from his 5 to 10 year sentence under Docket CR9-43368 [Sentence Seven] on November 11, 1984." Id. Ms. Steele testified that the information contained in Mrs. Bryan's letter was, with a reasonable degree of certainty, reliable and credible based on the incorrect time sheet. Id., at 26. Ms. Steele also testified that she disagreed with Mrs. Bryan's conclusion that the petitioner discharged from Sentence Seven on November 11, 1984, and that based upon a review of the corrected time sheet, the petitioner's actual release date was March 31, 1984. Id. at 48.
Both the incorrect and the corrected time sheets as well as Mrs. Bryan's letter were obtained from the petitioner's master file. Mrs. Bryan's letter correctly, though based on the incorrect time sheet, indicated that the petitioner discharged from Sentence Seven on November 11, 1984. Mrs. Bryan, a records supervisor for "many years" with the Department of Correction who was known as an expert in time calculation;Id., at 25-6; concluded on either August 8 or 9, 1988, that the petitioner discharged from Sentence Seven on November 11, 1984. And while it may not be possible to determine specifically when the "X" was placed on the maximum portion of incorrect time sheet and the corrected time sheet was generated, this Court concludes that the "X" was placed on the incorrect time sheet subsequent to August 9, 1988. This Court cannot conclude that a records supervisor with Mrs. Bryan's expertise would provide information based on a time sheet that was designated as being incorrect. or stated differently, if the "X" had been placed on the maximum portion of the incorrect time sheet, Mrs. Bryan would have either found the corrected time sheet in the file and provided information based on that time sheet or not knowingly provided information based on the incorrect time sheet. Consequently, this Court finds that the corrected time sheet was generated sometime subsequent to August 9, 1988.
Based on the foregoing, this Court also finds that the portion of the incorrect time sheet which correctly displays the projected minimum release date indicates that the petitioner began serving Sentence Eight on July 15, 1983. The stipulation does not indicate any other sentence with a term of nine months aside from Sentence Eight. The nine-month term in Sentence Eight was ordered to be served consecutive to Sentence CT Page 6057 Seven. As previously indicated, the time sheet for Sentence Seven clearly contains five entries dated July 15, 1983. The first such entry is "9 Mos Consec" and is followed by three entries indicating that 210 days of credit were applied to the nine-month sentence at the beginning of the term, which is in accordance with the up-front posting method in use at that time. Consequently, the petitioner had approximately two months left to serve on Sentence Eight after the 210 days are subtracted from the nine-month sentence, which is confirmed by cross-referencing the projected release date calculated on March 24, 1983 to the projected release date resulting from the 210-day credit.[9] The former resulted in a July 15, 1983 release date; the latter resulted in a release date of September 17, 1983, which meant that there were approximately two months to serve on Sentence Eight, though the petitioner would be on parole from July 15, 1983 to September 17, 1983, the projected discharge date of Sentence Eight.
The final entry dated July 15, 1983 shows that the petitioner was paroled out-of-state to Pennsylvania. This release to parole on July 15, 1983, the very same day the petitioner started serving Sentence Eight, is confirmed by cross-referencing the entry posted July 15, 1983 with the entry posted March 24, 1983, which indicates that the petitioner was voted to parole effective July 15, 1983. See also Resp't Post-Tr. Br., at 3. The next posting, dated December 6, 1983, shows that the petitioner was returned to New Haven Correctional Center with charges. On February 14, 1984, a posting was made that the petitioner's case was called. No further postings were made to the minimum portion of the time sheet, though both the incorrect and corrected maximum portions show that, starting with August 1, 1984 and ending with November 5, 1984, five postings were made for 7-day job credit totaling fifteen (15) days. Accordingly, the maximum projected release date on the incorrect time sheet is November 11, 1984, while the corrected time sheet has a projected release date of March 16, 1984.
Sentence Nine was imposed on June 14, 1984, a date that falls between these two projected maximum release dates. The offense date for Sentence Nine is September 30, 1983; Pet'r. Ex. E; approximately two weeks after September 17, 1983. "The essence of parole is release from prison, beforecompletion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. . . . The statutes further provide that any returned parolee who has violated his parole may be retained in the institution from which he was paroled for a period equal to the unexpired portion of the term of his sentence at the date of the request or order for his return." (Emphasis added.) (Internal citations and quotations omitted.) Parham v. Warden, 172 Conn. 126, 131,374 A.2d 137 (1976). CT Page 6058
The petitioner's sentence in Sentence Eight had a projected expiration date of September 17, 1983. The offense date for Sentence Nine was September 30, 1983. Consequently, the petitioner was on parole from July 15, 1983 until September 17, 1983, which represents the balance of the petitioner's term in Sentence Eight. Based on these dates, this Court finds that the petitioner discharged from Sentence Eight on September 17, 1983. This Court also finds that from September 17, 1983 to September 30, 1983, the petitioner was neither serving time on a sentence nor on parole. Thus, based on all the foregoing, this Court concludes that the petitioner in fact had a break in confinement.
The petitioner argues that the corrected time sheet, which moved the projected release date for the maximum portion of Sentence Seven to March 16, 1984, which is approximately three (3) months prior to the imposition of Sentence Nine, artificially created a break in the petitioner's confinement. In other words, that "[b]y posting and crediting good time [the] petitioner had not yet earned, respondent created a purported break in what had always been treated, as a practical matter, as one continuous term of imprisonment[.]" Pet'r Post-Trial Br., at 7. There is no evidence to support such a contention that the respondent has "created" a break in the petitioner's term of confinement. Quite the contrary: the evidence in this matter shows that the petitioner transitioned from Sentence Seven to Sentence Eight on or about July 15, 1983, and that the petitioner completed his term of parole for Sentence Eight on or about September 17, 1983. This Court finds that any corrections made to the maximum portion of the Sentence Seven time sheet were not made to artificially create a purported break in the petitioner's confinement.
As evidenced by the stipulation, Sentence Nine was imposed on June 14, 1984. The time sheet for Sentence Nine indicates that the petitioner was credited with the following 7-day job credit: on August 1, 1984, one day; on September 1, 1984, four days; on October 1, 1984, five days; and November 1, 1984, four days. Pet'r. Ex. E, at 20-1. With the exception of a posting made on November 5, 1984 to the incorrect portion of the Sentence Seven time sheet, which awarded one day of 7-day job credit, these four postings to the Sentence Nine time sheet correspond to the entries made between August and November 1984 on the incorrect Sentence Seven time sheet.
Ms. Steele testified at the habeas trial that the incorrect portion of the Sentence Seven/Eight time sheet was still in use from August through November 1984 to make the five separate entries posting a total of fifteen days of 7-day job credit. Tr. (Dec. 19, 2001), at 39. Ms. Steele also testified that, based on the time sheet, Sentence Seven was still running at the time the five postings were made between August and November 1984. Id., at 40. When asked whether the time sheet postings CT Page 6059 mean that the petitioner was still being held under Sentence Seven on June 14, 1984, Ms. Steele answered in the affirmative. Id. As previously discussed, Ms. Steele testified that the corrected time sheet probably was made in one sitting and that all entries, with the exception of the corrected jail credit and jail credit good time amounts, were simply copied over. Id., at 44. The result of copying over entries, however, resulted in five postings made to the corrected time sheet between August and November 1984 that had projected maximum release dates subsequent to the posting date. That is, 7-day job credits were posted to a sentence on dates when the petitioner had discharged from that sentence.
This is confirmed by Ms. Steele's testimony that, based on the corrected time sheet, the petitioner was discharged from Sentence Seven on March 31, 1984. Id., at 48. March 31, 1984 is the last date on the corrected time sheet which is antecedent to the posting date for a projected maximum release date. Based on the foregoing, this Court finds that the petitioner was not being held under Sentence Seven on March 31, 1984. This Court also finds that both Sentence Seven time sheets' maximumprojected release dates have no relevance to the determination of when the petitioner discharged from Sentences Seven and Eight, for the maximum portions of these two time sheets estimate the maximum, whereas the minimum portion of the correct Sentence Seven time sheet tracks the transition from Sentence Seven to Sentence Eight, the awarding of good time for Sentence Eight, as well as the release to parole on Sentence Eight.
In this matter, the petitioner was sentenced in Sentence Nine on June 14, 1984 to a term of twenty-five years to run concurrently with his prior sentences. The time sheet for Sentence Nine, the petitioner's controlling sentence subsequent to the June 14, 1984 sentencing, indicates that the petitioner earned 7-day job credits between August and November 1984. This Court is unable to determine from the record why these 7-day job credits were also credited to the petitioner's Sentence Seven/Eight time sheet subsequent to the petitioner discharging from both Sentence Seven and Eight on or before September 17, 1983. Additionally, though the parties have stipulated to Sentence Nine being ordered to run concurrently with the petitioner's prior sentences, this Court cannot find any support in the record aside from this stipulation that the petitioner was in fact in custody for an undischarged term of imprisonment when he was sentenced on June 14, 1984.
The burden of proof is upon the petitioner to show that he was held for one continuous term of confinement. Summerville v. Warden, 229 Conn. 397,428, 641 A.2d 1356 (1994); Lubesky v. Bronson, 213 Conn. 97, 109-10,566 A.2d 688 (1989); Johnson v. Commissioner of Correction,60 Conn. App. 1, 758 A.2d 442, cert. denied, 255 Conn. 902, 762 A.2d 908
CT Page 6060 (2000). This Court has found that the petitioner has failed to show that he was continuously held from February 10, 1972 to the present, and that there was a break in the petitioner's term of confinement from September 17, 1983 until at least December 6, 1983. Because the petitioner has failed to show that he was continuously held from 1972 to the present, the petitioner's claim that he is entitled to be credited with statutory and meritorious good time earned between 1972 and 1983 is without merit. Consequently, the claim that the respondent has violated the petitioner's right to equal protection of the law as guaranteed by theFourteenth
Amendment to the U.S. Constitution and Article I, §§ 8 and 10 of the Connecticut Constitution by failing to properly construe the petitioner's term of confinement and award the 2,038 days is also without merit.
 COUNTS III IV
The petitioner also alleges that the respondent has failed to credit the petitioner's current sentence both with 120 days of outstandingly meritorious performance award credit as well as 429 days of seven-day job credit, and that this failure violates the petitioner's right to equal protection of the law as guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, §§ 8 and 10 of the Connecticut Constitution. Both of these credits were earned prior to May 26, 1993. Pet'r Post-Trial Br., at 25. Thus, the petitioner seeks to have these two credits carried over, in accordance with Rivera, to Sentence Ten, which is the petitioner's current controlling sentence.
The record shows that the claim for 120 days of OMPA credit is based on two separate postings made for Sentence Nine: 1) on July 23, 1986, an award of thirty (30) days; and 2) on May 10, 1988, an award of ninety (90) days. The parties have stipulated that the time sheet for Sentence Nine entails 429 days of seven-day job credit posted between the dates of June 14, 1984 and May 26, 1993. Tr. (Dec. 19, 2001), at 3. Stated differently, the 429 days of 7-day job credit claimed were earned on Sentence Nine prior to the petitioner being sentenced in Sentence Ten.[10]
General Statutes § 18-98b in relevant part mandates that: "In addition to any commutation or diminution of sentence or any meritorious time service award which may have been granted under section 18-7 or 18-7a
any inmate committed to the custody of the Commissioner of Correction for a definite term, or for a term with a minimum sentence imposed, may have not more than one hundred and twenty days deducted from any onecontinuous term of imprisonment as an outstandingly meritorious performance award in the discretion of the Commissioner of Correction for exceptional personal achievement, accomplishment and other outstandingly meritorious performance[.] . . . When any prisoner is held under moreCT Page 6061than one conviction the several terms of imprisonment imposed thereundershall be construed as on continuous term for purposes of determining eligibility for any outstandingly meritorious performance award authorized by this section." (Emphasis added.)
As stipulated to by the parties, the time sheet for Sentence Ten, the petitioner's current controlling sentence, shows that no OMPA credit has been awarded on Sentence Ten. Stip., at 3; see also Pet'r. Ex. G, at 1. The parties have also stipulated that the petitioner was still serving Sentence Nine on May 16, 1993, when Sentence Ten was imposed. Stip., at 2-3. The parties have additionally stipulated that on April 19, 1992, the petitioner was not in a correctional facility at the time but was out on a furlough from a correctional facility at which time the April 19, 1992 [Sentence Ten] offense was committed.[11] Tr. (Dec. 19, 2001), 76.
Furloughs are controlled by General Statutes § 18-101a: "The Commissioner of Correction at his discretion may extend the limits of the place of confinement of a prisoner as to whom there is a reasonable belief he will honor his trust, by authorizing him under prescribed conditions to visit a specifically designated place or places, within or without the state, for periods not exceeding fifteen days and return to the same or another institution or facility. Such periods may be renewed at the discretion of the commissioner. Such furlough may be granted only to permit a visit to a dying relative, attendance at the funeral of a relative, the obtaining of medical services not otherwise available, the contacting of prospective employers, or for any compelling reasonconsistent with rehabilitation. An inmate who fails to return from furlough as provided in the furlough agreement shall be guilty of the crime of escape in the first degree." (Emphasis added.)
As § 18-101a clearly indicates, furlough is an extension of the limits of the place of confinement for humanitarian or rehabilitative purposes. An inmate who has been furloughed remains in the custody of the Commissioner of Correction and, if eligible, continues earning statutory good time. The petitioner's time sheet for Sentence Nine contains postings for statutory good time made while the petitioner was on furlough. Pet'r Ex. B, at 10. And while the Commissioner of Correctioncan forfeit earned statutory good time; General Statutes § 18-7a
(a)-(c); the petitioner's time sheet for Sentence Nine shows that the petitioner has never forfeited any type of good time credit. Pet'r Ex. E.[12] Even if an inmate forfeits good time as a result of misconduct, any potential break in the term of confinement can only arise if the furloughed inmate fails to return from furlough and is considered to have escaped from custody.
Consequently, this Court finds that the petitioner has been CT Page 6062 continuously held from June 14, 1984 to the present. The petitioner argues that "Section 18-98b . . . contains "one continuous term' language that is nearly identical to the "one continuous term' language found in § 18-7 [and that] when an inmate is held under more than one term of imprisonment whether consecutive, concurrent or subsequently imposed, good time under § 18-98b should be applied toward the inmate's one continuous term of imprisonment." Pet'r Post-Trial Br., at 21. The respondent, however, contends that because "the petitioner received [an] OMPA award during the pendency of his 1984 sentence, it was used once, and cannot be used again during the continuous term of confinement." Resp't Post-Trial Br., at 13.
The Supreme Court "has long held, and the cases are numerous, that if a statute is clear and unambiguous, there is no room for construction."State v. Diaz, 226 Conn. 514, 555, 628 A.2d 567 (1993), quoting Murrayv. Lopes, 205 Conn. 27, 33, 529 A.2d 1302 (1987). This Court finds that General Statutes § 18-98b is clear and unambiguous. § 18-98b
limits to 120 days the amount that can be deducted from any one continuous term of imprisonment as an outstandingly meritorious performance award. § 18-98b does not contain language that limits how many times such an award can be made, so long as the 120-day limit is not exceeded as to each continuous term of imprisonment.
Because this Court has previously concluded that there was a break in the petitioner's term of confinement prior to the imposition of Sentence Nine, this Court now concludes that any OMPA credit given to the petitioner during the pendency of his continuous term of confinement beginning in 1972 and ending in 1983 has no bearing on whether the petitioner is entitled to the OMPA credit being claimed for the continuous term from 1984 to the present. The petitioner was awarded a total of 120 days of OMPA credit on Sentence Nine, namely thirty (30) days on July 23, 1986 and ninety (90) days on May 10, 1988. Both of these dates precede May 26, 1993, the date on which the petitioner was sentenced in Sentence Ten to a term to run concurrently with his prior sentences.
Accordingly, the petitioner's estimated release date for Sentence Nine was advanced by 120 days as a result of the OMPA credit prior to Sentence Ten. § 18-98b requires that Sentences Nine and Ten be viewed as one continuous term of confinement for purposes of determining eligibility for any OMPA credit. If the OMPA credit of 120 days is not carried forward to the petitioner's controlling sentence, i.e. Sentence Ten, he will not realize any benefit of the OMPA credit.[13]
"[G]ood time is a commutation of a sentence, affecting an inmate's parole and discharge dates, thereby serving an important rehabilitative function by allowing an inmate to earn an earlier release for himself." CT Page 6063Rivera v. Commissioner of Correction, supra, 254 Conn. 247. OMPA credits received by a petitioner "are analogous to good behavior credit." Wrightv. Commissioner of Correction, 216 Conn. 220, 226, 578 A.2d 1071 (1990). The petitioner was awarded 120 days of OMPA for either exceptional personal achievement, accomplishment or other outstandingly meritorious performance. This Court finds that the important rehabilitative function of allowing an inmate to earn an earlier release for himself through receiving an award posted for exceptional personal achievement, accomplishment or other outstandingly meritorious performance would be frustrated if the award is not, in accordance with § 18-98b, carried over and applied to a continuous term of confinement's controlling sentence. Consequently, this Court finds that the petitioner is entitled to have 120 days of OMPA credit posted on Sentence Nine applied to Sentence Ten.
The petitioner also claims that he is entitled to have 429 days of seven-day job credit posted on Sentence Nine between the dates of June 14, 194 and May 26, 1993 applied to Sentence Ten, his current controlling sentence. General Statutes § 18-98a in relevant parts states that "[e]ach person committed to the custody of the Commissioner of Correction who is employed within the institution to which he was sentenced, or outside as provided by 18-100, for a period of seven consecutive days . . . may have one day deducted from his sentence for such period, in addition to any other earned time, at the discretion of the Commissioner of Correction."
Again, as with the petitioner's claim for the OMPA credit, the claimed credit of 429 days of 7-day job credit was earned by the petitioner prior to when Sentence Ten began to run, i.e., prior to May 26, 1993. Any advancement of Sentence Nine's projected release date as a result of 7-day job credit postings would become a chimera upon the petitioner receiving the concurrent sentence imposed in Sentence Ten. In other words, the petitioner receives no tangible benefit for the 7-day job credit earned on Sentence Nine between June 14, 1983 and May 26, 1993unless it is applied to Sentence Ten, his current controlling sentence.
This Court finds that 7-day job credit is also analogous to good behavior credit. Wright v. Commissioner of Correction, supra.216 Conn. 226. This Court also finds that the important rehabilitative function of allowing the petitioner to earn an earlier release for himself will be frustrated unless the 429 days earned during Sentence Nine prior to May 26, 1993. Based on the previous findings that Sentences Nine and Ten entail one continuous term of confinement, and that Sentence Ten is the petitioner's controlling sentence, this Court finds that the petitioner is entitled to have the 429 days earned on Sentence Nine carried over to Sentence Ten in accordance with the principles enunciated CT Page 6064 in Rivera.
The petitioner's fourth count alleges that the failure to award the 549 days claimed in Count Three violates the petitioner's right to equal protection of the law as guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, §§ 8 and 10 of the Connecticut Constitution. There was no evidence presented how the failure to award the credits claimed in count three violates the petitioner's right to equal protection of the law. Consequently, this Court, because it has decided count three in the petitioner's favor, will not address the equal protection claim.
 COUNT V
The petitioner's last count alleges that the respondent's failure to credit the petitioner's current sentence with a total of 2,587 days has resulted in the petitioner being unjustly confined for over two years and has violated the petitioner's right to be free from deprivation of liberty without due process of law as guaranteed by theFourteenth
Amendment of the U.S. Constitution and Article I, §§ 8 and 10 of the Connecticut Constitution. This Court has concluded that counts one and two have no merit. Count three, conversely, has been decided in the petitioner's favor and has resulted in a total of 549 days of OMPA and 7-day job credit being applied to the petitioner's current controlling sentence.
The petitioner has estimated that the release date if all 2,587 days are awarded would have been September of 1998. 2nd Am. Pet., at 8. This Court has concluded that the petitioner is entitled to receive 549 days of credit earned on Sentence Nine applied to his current controlling sentence, Sentence Ten, which has a projected release date of June of 2005. Pet'r Ex. G. The 549-day award advances the petitioner's projected release date by approximately eighteen (18) months to late 2003 or early 2004. Because this new projected release date requires that the petitioner continue serving Sentence Ten until such date, this Court finds that the petitioner has not been unjustly confined and that count five is without merit.
 CONCLUSION
This Court has determined that the claims raised in counts one, two and five are without merit. Count three, however, was found to have merit. Because count three is meritorious, count four is not addressed. As a result of the Court deciding count three in the petitioner's favor, the Court concludes that the petitioner is entitled to receive 120 days of OMPA credit and 429 days of 7-day job credit earned on Sentence Nine CT Page 6065 carried over to Sentence Ten in accordance with the principles established in Rivera. The respondent is ordered to apply these credits totaling 549 days to the petitioner's current controlling sentence in docket number CR10-204657 and recalculate the projected release date in accordance with this decision.
Judgment is entered granting the relief requested in count three. All other requested relief is denied.
BARRY, JUDGE TRIAL REFEREE.
 APPENDIX 1
[EDITORS' NOTE: THE CONNECTICUT DEPARTMENT OF CORRECTION TIME SHEET IS ELECTRONICALLY NON-TRANSFERRABLE.]
 APPENDIX 2
[EDITORS' NOTE: THE CONNECTICUT DEPARTMENT OF CORRECTION TIME SHEET IS ELECTRONICALLY NON-TRANSFERRABLE.]